Dorothy ELLENDER, Angela Zamski, James Trowbridge, Lois V. Brunjes, and Verley Smith, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Richard S. SCHWEIKER, Secretary of the Department of Health and Human Services, and John A. Svahn, Commissioner of the Social Security Administration, Defendants.

No. 82 Civ. 4816 (IBC).

United States District Court,
S.D. New York.

Oct. 26, 1982.

Legal Services for the Elderly, New York City, for plaintiffs; Toby Golick, Jonathan A. Weiss, New York City, of counsel.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for defendants; Jamie Vincent Gregg, Asst. U.S. Atty., New York City, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Plaintiffs seek an order, pursuant to 28 U.S.C. § 2202 and Fed.R.Civ.P. 65, enjoining Richard S. Schweiker, Secretary of the Department of Health and Human Services, and John Svahn, Commissioner of the Social Security Administration, from recovering overpayments of Social Security benefits and withholding future benefits. Additionally, plaintiffs seek an order, pursuant to Fed.R.Civ.P. 23, certifying a class of all persons in New York State who have been, or will be, subjected to the collection efforts

of the Social Security Administration. For reasons set forth below, the motions are granted in all respects.

On September 14, 1982 Rose Cinque, Joyce Koslin and Jennie Koslin moved, by way of Order to Show Cause, to intervene in this action pursuant to Fed.R.Civ.P. 24. For reasons set forth *infra,* their application is granted in all respects.

The gravamen of the factual allegations set forth in the complaint and the application for a preliminary injunction is that plaintiffs at present receive benefits under the Old Age, Survivors and Disability (OASDI) program, and formerly received benefits under the Supplemental Security Income (SSI) program. All have received notices from the Social Security Administration informing them that they have received SSI overpayments and repayment is due immediately or through reduction of OASDI benefits they now receive.[1] The claimed offending notices read:

SUPPLEMENTAL SECURITY INCOME NOTICE OF ACTION TO RECOVER OVERPAYMENT

FROM: Department of Health and Human 333 Avenue X
Services Social Security Brooklyn, NY 11223
Administration

Date: April 19, 1982
Social Security Number:

There is an outstanding $1954.86 balance on your supplemental security income overpayment due the Social Security Administration.

Please refund the $1954.86 immediately. Make your check or money order payable to the Social Security Administration, social security number , and mail it in the enclosed envelope.

If you cannot make full refund at this time, please refund as much as you can and contact us to arrange for refunding the balance. For your convenience, we can withhold the balance of your overpayment from your social security benefit.

If you would like to use this method of repaying your overpayment, please sign the attached statement and return it to us in the enclosed envelope.

If you wish to discuss a different method of repaying the overpayment, call, write or come into this office.

**1.** *See* Complaint, *Ellender v. Schweiker,* No. 82 Civ. 4816, filed July 22, 1982, Exh. C.

**2.** On August 12, 1982, Chief Judge Motley, sitting in Part One of this Court, granted plaintiffs' application for a temporary restraining order enjoining defendants, pending the hearing and determination of this motion, "from

Enclosures 627–3351

------------------------------------------------------------

_____
Name

_____
SSN

For my convenience, please withhold my full social security benefit each month until my supplemental security income (SSI) overpayment of $ is fully recovered.

_____ _____
Signature Date

In essence, plaintiffs assert that such notices are defective in the main, especially because they violate due process and statutory law by failing to advise them of their rights and omit necessary information concerning repayment. Thus: (1) Time periods during which the alleged overpayments arose; (2) Amount of overpayment in each time period; (3) Amount of any prior repayment; (4) Reason for the overpayment; (5) Right to reconsideration of the existence of the overpayment; (6) Right to have the overpayment waived; (7) Right to a hearing; (8) Assignment of OASDI benefits is prohibited by law; (9) Recovery of the overpayments may be barred by the applicable statute of limitations; and (10) Partial payment or written acknowledgement of the overpayment may revive the statute of limitations.[2]

Plaintiffs further allege that efforts by the Social Security Administration to recoup overpayments in one program by reducing benefits in another program violate statutory provisions which bar, as a matter of law, the transfer or assignment of such benefits. *See* 42 U.S.C. § 407. Additionally, defendants have moved for an order dismissing the complaint for lack of subject matter jurisdiction and failure to state a claim. This application is denied to the extent discussed *infra.*

### Background

The Supplemental Security Income (SSI) program is a federally-funded public assist-

reducing the OASDI grant of any plaintiff or member of the proposed plaintiff class who has already received a notice from defendants in the form shown in Exhibit C to the complaint...." Order to Show Cause, *Ellender v. Schweiker,* No. 82 Civ. 4816, filed August 16, 1982, p. 4.

ance program established under Title XVI of the Social Security Act.[3] It provides minimum subsistence benefits to persons in need who are 65 years or older, and to persons under 65 who are blind or disabled and whose other incomes and resources fall below a prescribed level set by statute. It went into effect in January, 1974 and replaced earlier state-administered welfare programs for the aged, blind and disabled.[4]

The Old Age, Survivors and Disability Insurance (OASDI) program, established under Title II of the Social Security Act, is an insurance program which provides retirement, disability and survivor benefits to former wage earners who have contributed to the program for a sufficient number of calendar quarters.[5] Once an eligible wage earner can no longer work due to age, disability or death, funds are paid to him or his survivors from the OASDI "trust fund" administered by the Social Security Administration. Millions of former workers receive their monthly green-colored Social Security checks from this fund.

Even though both programs are under the auspices of the Social Security Administration, they are separate and distinct, and exist pursuant to different statutory authority. They have different eligibility requirements and were designed to serve entirely separate groups. SSI is a needs-based program funded from general revenues.[6] OASDI payments, funded through a trust fund, are based on contributions of the wage earner, number of working years and age of retirement.[7] Aged, blind or disabled OASDI recipients may be entitled to receive SSI payments in addition provided they meet the prerequisites of that program.[8]

For reasons which remain largely unexplained, between January, 1974 and December, 1975 the Social Security Administration overpaid SSI recipients, including plaintiffs in the instant action. The only explanation for these overpayments in the record before us is that in one instance they resulted from "computer error." Affidavit, Anastasis Kastanos, undated, ¶ 7. The total amount of SSI overpayments nationwide was approximately $1 billion as of December 31, 1981.[9]

The Secretary of the Department of Health and Human Services is empowered to recover OASDI overpayments by adjusting future OASDI payments:

"When the Secretary finds that more ... than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations to be prescribed by the Secretary, as follows: (1) [T]he Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount ...."

42 U.S.C. § 404.

Likewise, the Secretary may recover SSI overpayments by adjusting and reducing future SSI payments:

"Whenever the Secretary finds that more ... than the correct amount of benefits have been paid with respect to any individual, proper adjustment shall ... be made by appropriate adjustment in future payments to such individual or by recovery from ... such individual...."

---

3. 42 U.S.C. § 1381 *et seq.*

4. 42 U.S.C. §§ 1382–83. *See* Affidavit, Dorothy Ellender, verified June 30, 1982, Exh. A. At present, the monthly income level in New York is $348 for an individual and $506 for a couple; the resource level is $1,500 for an individual and $2,250 for a couple. *See* 42 U.S.C. § 1382(a)(1)(B).

5. 42 U.S.C. § 401 *et seq.*

6. *See* 42 U.S.C. § 1381.

7. *See* 42 U.S.C. § 401.

8. As plaintiffs point out, many former SSI recipients have become ineligible to receive these benefits because their OASDI payments have raised their income over the SSI eligibility ceiling. *See* Plaintiffs' Memorandum in Support, dated August 6, 1982, pp. 3–4.

9. Affidavit, Harris G. Factor, verified September 3, 1982, ¶ 11 in opposition to the application.

42 U.S.C. § 1383(b).

However, there is no authority empowering the Secretary to recoup overpayments in one program by adjusting future benefits under a different program—"cross-program" recovery.[10] Indeed, OASDI benefits are protected from legal process and assignment:

"The right of any person to any future payment [of OASDI benefits] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

42 U.S.C. § 407.

Nevertheless, the Social Security Administration undertook efforts (in part clearly revealed by "Supplemental Security Income Notice of Action to Recover Overpayment" notices set forth hereinabove) to recover the SSI overpayments and devised a plan hinged on gaining the consent of the recipient to a reduction in future OASDI benefits. A memorandum (dated November 5, 1981) from Sandy Clark, Social Security Associate Commissioner for Operational Policy and Procedures, addressed to all Regional Commissioners and Area Directors, reveals the Social Security Administration's philosophy toward recovering the claimed overpayments:

"The Social Security Administration's two top operational priorities for the next two years are implementing the 1981 legislation and improving debt management. The strategy for improving debt management concentrates on debt collection.... We have begun the significant task of implementing the [Social Security Administration] Debt Collection Action Plan

which hones in on the collection, prevention and detection of all [Social Security Administration] administered program overpayments. *Development and implementation of the plan is predicated on a shift in [the Social Security Administration's] philosophy regarding overpayment resolution, i.e., emphasis on recovery (rather than waiver or write-off) and on the speed of that recovery...."* [11] (emphasis supplied).

The Social Security Administration's "Program Operations Manual System" (the POMS Manual) reveals the devised procedure for recovering SSI overpayments. First, the Social Security Administration separated the individual overpayment cases into two categories, "delinquent" and "deferred." Delinquent cases were those in which no repayments had been made; deferred cases were those wherein an unresolved overpayment was detected but no decision resolving it had been made.[12] Once an overpayment was categorized as delinquent, the Social Security Administration mailed the SSI recipient the preprinted Supplemental Security Income notice at issue here. The Administration's POMS manual explains the rationale and guidelines for sending these notices:

"Adjustment of [SSI] overpayment against [OASDI] benefits as a means of recovery of [SSI] overpayment is an available means of recoupment. Therefore, if refund is not offered, adjustment of [OASDI] benefits should be suggested as an available means of recoupment....
However, [an SSI] overpayment may be recovered by a withholding of [OASDI] benefits, ... only if the individual expressly requests it in writing as a matter

---

10. *See* Government's Memorandum of Law in Opposition, filed September 10, 1982, pp. 4–5.

11. Order to Show Cause, *Ellender v. Schweiker,* No. 82 Civ. 4816, filed August 16, 1982, Attachment B.

12. Before Clarke's memorandum, Social Security Administration policy apparently concentrated on the following Congressional grant of

authority to the Secretary of the Department of Health and Human Services:

"[T]here shall be no adjustment of payments to, or recovery of the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience."

42 U.S.C. § 404(b).

of convenience.... In such cases, obtain a statement signed by the overpaid individual requesting the adjustment and indicating that the request is being made for the individual's own convenience...."[13]

Because it goes to the very heart of the contest here presented, we deem it advisable (at the risk of repetition) to emphasize that the notice at issue informs the recipient of an outstanding balance of SSI overpayments and asks that the sum be refunded *"immediately."* Further, "If you cannot make full refund at this time, please refund as much as you can.... For your convenience, *we can withhold the balance of your overpayment from your social security benefit*.... If you would like to use this method of repaying your overpayment, please sign the attached statement and return it to us in the enclosed envelope." The attached statement simply reads, "For my convenience, *please withhold my full social security benefit each month until my supplemental security income (SSI) overpayment of $ is fully recovered."* (emphasis ours).

The POMS Manual takes the position that if a recipient does not respond to the pre-printed notice within 30 days, the Social Security Administration would then undertake further steps to recover the overpayment. The Manual further advises that if the overpayment is at least $30, "a collection notice should be mailed indicating that payment is past due"; that if no response was received to this second notice, "a telephone contact should be attempted"; that if telephone contact is not made, "a bill for the past due amount should be sent by certified mail"; and ultimately, "a personal contact should be attempted. During this personal contact, compromise should always be discussed."[14]

*Plaintiffs*

The five named plaintiffs in this action, all former SSI recipients, now receive benefits under the OASDI program. Each received the notice at issue here ("Supplemental Security Income Notice of Action to Recover Overpayment") or were informed orally of its content. Further, each plaintiff is elderly, sick and/or infirm, and for each OASDI benefits represent the primary or sole and exclusive means of subsistence and support. We are constrained to undertake in some detail the plight of each named plaintiff.

Dorothy Ellender is a 75 year old widow whose sole present income is a monthly OASDI check for $413.90. She also received benefits under the SSI program between January, 1974 and December 5, 1975 at the monthly rate of $161.85. On October 5, 1978 Mrs. Ellender received a form from the Social Security Administration informing her that she had received a $4,264.95 SSI overpayment during that period.[15] Even though this form advised her that she had a right to appeal the determination of the overpayment or seek a waiver, she did neither because she was no longer receiving SSI payments at that time and felt that the notice was "entirely erroneous."[16]

She heard nothing further concerning the alleged overpayment until she received a copy of the notice at issue here on June 8, 1982, which stated that she must refund $4,264.95 *"immediately."*[17] (emphasis ours). She asserts, "I was extremely frightened and upset when I received [the notice] .... I am having a difficult time managing on my Social Security Widow's benefit check .... I could not manage financially if this check was reduced." Mrs. Ellender further maintains that she understood once she received the notice "that my only choice was either to repay immediately, which is impossible since I do not have the money, or to

---

**13.** POMS Manual § 02220.035.

**14.** *Id.*

**15.** Affidavit, Dorothy Ellender, verified June 30, 1982, ¶ 12, Exh. L.

**16.** *Id.* at ¶ 13.

**17.** *Id.* at Exh. M.

authorize withholding the money from my Social Security check." [18]

James Trowbridge, 68 years old and living alone, supports himself solely from monthly OASDI benefits of $393 and $70 in food stamps. He is suffering from emphysema, an ulcer and hypertension.[19] A home attendant, paid for by Medicaid, visits three days a week and assists him with shopping, cooking and other activities he cannot physically perform himself.[20]

Mr. Trowbridge received SSI payments beginning in January, 1974 but was eventually discontinued from this program because cost of living increases in his OASDI benefits brought him above the SSI eligibility level.[21]

On or about June 8, 1982 Mr. Trowbridge received the notice from the Social Security Administration stating that he owed $3,795.38 in SSI overpayments. He asserts he never provided the Administration with inaccurate information, had no knowledge he was being overpaid, and claims the alleged overpayments were due to errors of the New York Department of Social Services and/or the Social Security Administration.[22] He further states he lives "in fear that my Social Security benefits will be stopped or reduced in order to recover the alleged overpayment and that I will not be able to support myself. My health has suffered due to the anxiety which I have experienced." [23]

The next named plaintiff is Lois W. Brunjes, 65 years old and also living alone in New York City. She declares she currently lives on $400 per month from OASDI payments; that her $200 monthly rent is paid by an independent agency; and that after the remainder of her monthly expenses are paid, she has nothing left from her $400 check.[24]

In May, 1982 Mrs. Brunjes received the notice from the Social Security Administration indicating that she had received SSI overpayments of $521.86. She asserts that when she received this notice, she believed her only options were either to pay the alleged overpayment in one sum or have it reduced from her monthly OASDI check. She has no recollection of ever receiving more money than she was entitled to and has "no idea" why the Social Security Administration believes she has been overpaid.[25] Apparently she did nothing in response to the notice, and on June 21, 1982 she received a letter from the Administration asking that the overpayment be paid in its entirety and requesting she "respond immediately to avoid further action." [26] Mrs. Brunjes asserts that she understood this letter to mean that if she did not repay, her OASDI benefits thereunder may be stopped or reduced; that she has been "forced to think about how I could possibly live from month to month without my full OASDI check and how I would be able to provide myself with food, clothing and other necessities." [27]

Plaintiff Angela Zamski, 66 years old and living with her disabled adult son, at present receives $316 in monthly OASDI benefits and $70 in food stamps. Mrs. Zamski received SSI benefits between 1974 and 1976, and asserts that she has no recollection of ever being overpaid.[28] However, on or about June 18, 1982 she received the notice from the Social Security Administration informing her she owed $1,824.30 in

---

**18.** *Id.* at ¶ 15.

**19.** Declaration, James Trowbridge, dated July 20, 1982, ¶¶ 1–5.

**20.** *Id.* at ¶ 15.

**21.** *Id.* at ¶ 8. The date when Trowbridge's SSI payments ceased has not been revealed.

**22.** *Id.* at ¶¶ 10–11.

**23.** *Id.* at ¶ 17.

**24.** Declaration, Lois W. Brunjes, dated July 20, 1982, ¶¶ 1, 13.

**25.** *Id.* at ¶ 10.

**26.** *Id.* at ¶ 12.

**27.** *Id.* at ¶¶ 12, 14.

**28.** Declaration, Angela Zamski, dated July 15, 1982, ¶¶ 1, 2, 5, 13.

SSI overpayments.[29] Upon receipt of this notice, Mrs. Zamski became very upset and sought assistance from Anastasis Kastanos, a community worker.

On June 30, 1982 Ms. Kastanos went to the local Social Security office on behalf of Mrs. Zamski and requested a waiver of the alleged overpayment.[30] Ms. Kastanos asserts that she was "led to believe" by a Social Security worker that if Mrs. Zamski did not repay the overpayment or agree to a reduction of her OASDI benefits, Mrs. Zamski's entire Social Security check would be withheld until repayment was completed; the overpayment was caused by computer error; and waiver or reconsideration were denied in these circumstances.[31] The Social Security worker then gave Ms. Kastanos a statement for Mrs. Zamski to sign authorizing a $50 monthly deduction from her OASDI benefits. Mrs. Zamski never signed this statement and asserts that "[g]iven my limited income, I cannot afford to have my Social Security check reduced or discontinued and still meet the cost of my subsistence ... the fear and anxiety which I am suffering has affected my health."[32]

The last named plaintiff is Verley Smith, an 82 year old widower who lives alone in Smithtown, New York. His sole current source of income is his monthly OASDI check of $282.[33] In May, 1982 Mr. Smith received two letters from the Social Security Administration requesting him to appear at the district office to discuss matters relating to his benefits. On June 14, 1982 he went to the district office, discussed overpayments which he had allegedly received, and signed an agreement allowing the Social Security Administration to withhold $15 each month from his OASDI check until the SSI overpayment was repaid.[34] Mr. Smith asserts that at the time he signed this agreement, he was informed by the Social Security worker that if he did not agree to the reduction, they would "take me to court." Since his Social Security benefits constitute his only means of support and he did not want to lose them entirely, he signed the agreement.[35] However, on July 26, 1982, under circumstances which have not been revealed, Mr. Smith signed and submitted to the Social Security Administration a revocation of the aforementioned agreement to withhold his benefits.[36]

### Intervenors

In addition to the named plaintiffs, three persons have made application to intervene in the instant action. The first is Jennie Koslin, representative payee for her daughter, Joyce Koslin, who formerly received SSI benefits and now receives OASDI checks. Jennie Koslin is 81 years old and lives with her husband and daughter. Joyce Koslin, single, 47 years old and a victim of Down's Syndrome, receives $328.00 monthly from OASDI as her only income. As representative payee, Mrs. Koslin is responsible for the receipt and use of those payments.[37]

On June 24, 1982, Mrs. Koslin received a Social Security Administration notice stating that Miss Koslin had received SSI overpayments totaling $2,787.57.[38] Mrs. Koslin then went to the Social Security Administration's district office to inquire about this notice, and was informed that all of her daughter's OASDI benefits would be with-

---

29. *Id.* at ¶ 6, Exh. A.

30. Declaration, Anastasis Kastanos, undated, ¶¶ 1–3.

31. *Id.* at ¶¶ 7–8.

32. Declaration, Angela Zamski, dated July 15, 1982, ¶¶ 14, 15. Apparently she is in ill health, having suffered a stroke in 1978 and a nervous breakdown in August, 1981. *Id.* at ¶¶ 3, 4.

33. Declaration, Verley Smith, dated July 16, 1982, ¶¶ 1, 3.

34. Affidavit, Valerie Ryan, verified August 12, 1982, ¶ 4.

35. Declaration, Verley Smith, dated July 16, 1982, ¶¶ 5, 6.

36. Affidavit, Valerie Ryan, verified August 12, 1982, ¶ 5.

37. Declaration, Jennie Koslin, dated September 13, 1982, ¶ 4.

38. *Id.*

held if she did not authorize $78 per month deduction from the OASDI check. Mrs. Koslin believed she had no choice but to consent and she signed the authorization form on June 25, 1982.

After discussing the matter with her husband, Mrs. Koslin decided to tell the district office she "thought it was wrong that we had to reduce Joyce's monthly check." She returned to the district office July 2, 1982 and signed a statement rescinding her authorization for the withholding of benefits. In this statement she explained that she had signed the June 25th authorization because she was "afraid that social security would take my daughter's whole check away" even though she was never aware ever receiving SSI overpayments.[39]

Despite Mrs. Koslin's written revocation of her authorization permitting the withholding of her daughter's OASDI benefits, she received a notice July 24, 1982 stating that Joyce's benefits had been reduced by $78.00 a month.[40] Mrs. Koslin claims this reduced check is not enough for Joyce to live on. As a result, Mrs. Koslin uses some of the pension money the parents received to support their daughter. "Because of our advanced ages, I cannot help but worry about the day when Joyce will not have our pensions to rely on."[41]

The third intervenor is Rose Cinque, also a former SSI recipient who now receives OASDI benefits. Ms. Cinque's only source of income is her monthly OASDI check for $373 and $70 a month in food stamps.[42]

On July 12, 1982, the Social Security Administration sent her a letter informing her of an outstanding balance of $5,426.53 on alleged SSI overpayments and requesting immediate repayment.[43] Approximately two weeks later, Ms. Cinque went to the local SSA office and "was told by a worker at the Social Security office that the government was going to reduce my Social Security check by $10 a month in order to recover the alleged overpayment."[44] She then signed the authorization, although she needs her entire OASDI check to meet her living expenses.[45]

Ms. Cinque's attorney subsequently informed her that the temporary restraining order entered herein on August 12, 1982 prohibited the Social Security Administration from reducing her check.[46] Nevertheless her September, 1982 OASDI check for $363.00 reflected the $10.00 reduction.[47]

### The Law

We note *in limine* that jurisdiction is predicated on 28 U.S.C. § 1361, which provides that, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Id.* Our Circuit Court of Appeals has stated: "An impressive array of cases in this and other circuits has established that § 1361 jurisdiction will lie to review procedures employed in administering social security benefits . . . ." *Ellis v. Blum,* 643 F.2d 68, 78 (2d Cir.1981). *See also Frost v. Weinberger,* 515 F.2d 57, 61–62 (2d Cir.1975), *cert. den. sub nom., Frost v. Mathews,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1974); *White v. Matthews,* 559 F.2d 852 (2d Cir.1977), *cert. den. sub nom., Califano v. White,* 435 U.S. 908, 98 S.Ct.

**39.** *Id.* at ¶ 13, Exh. C.

**40.** *Id.* at ¶ 16.

**41.** *Id.* at ¶ 18. Although the revocation of Mrs. Koslin's prior authorization subsequently became effective, there was a time lag in processing the revocation and Joyce's August check was reduced by $78.00. As of September 17, 1982, the Social Security Administration had not compensated her for that amount. Minutes, Oral Argument, September 17, 1982, p. 11.

**42.** Intervenor Complaint, dated September 13, 1982, ¶ 41.

**43.** Affidavit, Rose Cinque, verified September 9, 1982, ¶ 3.

**44.** *Id.* at ¶ 7.

**45.** *Id.* at ¶ 9.

**46.** *Id.* at ¶ 10.

**47.** *Id.*

1458, 55 L.Ed.2d 500 (1978); *Sharpe v. Harris,* 621 F.2d 530 (2d Cir.1980); *Califano v. Yamasaki,* 442 U.S. 682, 698–703, 99 S.Ct. 2545, 2556–2558, 61 L.Ed.2d 176 (1978), *on remand, Yamasaki v. Harris,* 607 F.2d 329 (9th Cir.1979); *Califano v. Sanders,* 430 U.S. 99, 107–109, 97 S.Ct. 980, 985–986, 51 L.Ed.2d 192 (1977); *Matthews v. Eldridge,* 424 U.S. 319, 326–32, 96 S.Ct. 893, 898–99, 47 L.Ed.2d 18 (1976); 42 U.S.C. § 405(g).

■■■ In its memorandum in support of the motion to dismiss, the Government argues that plaintiffs' claims for compensatory and punitive damages, and their claim for return of all sums withheld from OASDI benefits to effect repayment of SSI overpayments should be dismissed. *See* Government's Memorandum in Support, filed September 10, 1982, pp. 51–61. We note, however, it is clear compensatory damages can be awarded in actions such as this when Constitutional violations are alleged. *See Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Ellis v. Blum,* 643 F.2d 68, 83–85 (2d Cir.1981). Further, if we ultimately decide that any withholding of benefits was unlawful, the appropriate remedy would be to order the return of any such monies. *See Jiminez v. Weinberger,* 523 F.2d 689, 704 (7th Cir.1975), *cert. denied sub nom., Mathews v. Jiminez,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976). Accordingly, the application to dismiss these two remedies is denied. However, under the circumstances presented punitive damages cannot be awarded. 28 U.S.C. § 2674. Accordingly, the claim therefor is dismissed.

We turn to the factors to be considered in determining whether injunctive relief is appropriate. It is beyond cavil in this Circuit that a preliminary injunction may be granted only upon "a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). *See Buffalo Forge Co. v. Ampco-Pittsburgh Corp.,* 638 F.2d 568, 569 (2d Cir.1981); *Union Carbide Agricultural Products Co. v. Costle,* 632 F.2d 1014, 1017–18 (2d Cir.1980), *cert. denied,* 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196 (1981); *KMW International v. Chase Manhattan Bank, N.A.,* 606 F.2d 10, 14 (2d Cir.1979).

■■■ As to irreparable injury, plaintiffs argue they will suffer devastatingly if their monthly social security benefits are reduced. In the main, plaintiffs pay all monthly expenses out of their OASDI check, and because of old age and/or disability no other sources of income are available. Further, since the Social Security Administration's overpayment notices fail to inform them of their rights and requisite information, their decision to authorize OASDI reductions never represents a meaningful and voluntary decision; that defendants' frightening, unauthorized and menacing debt collection methods force them into a responsive decision with respect to such overpayments which would prevent them from meeting their monthly expenses.[48]

For its part, the Government remains steadfast and argues that plaintiffs' benefits cannot be affected without a signed authorization; that "any alleged acts of coercion" are not condoned, against defendants' own regulations and have been corrected; and that a mere solicitation for recoupment does not pose any real or imminent danger.[49]

We are well aware of our Circuit Court's admonition that under ordinary circumstances a mere money loss cannot form the basis for irreparable harm. "For potential injury to justify the granting of injunctive relief it must be irreparable; that is, it

---

[48]. Plaintiffs' Memorandum in Support, dated August 16, 1982, pp. 12–15; Plaintiffs' Reply Memorandum, dated September 16, 1982, pp. 4–8.

[49]. Government's Memorandum in Opposition, filed September 10, 1982, pp. 17–23.

must be the kind of injury for which an award of money cannot compensate. *See Jackson Dairy, supra:* 'it has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation and that where money damages [are] adequate compensation a preliminary injunction will not issue.' 596 F.2d at 72. Thus, if it appears that the potential harm to the moving party is simply a monetary loss, the potential injury is normally not deemed irreparable and hence does not justify injunctive relief. *E.g., KMW International v. Chase Manhattan Bank, N.A., supra,* 606 F.2d at 14–15. [However,] there may be exceptional cases in which a monetary loss could not be compensated by an award of money damages, as where, for example, the movant shows the loss would force him into bankruptcy, *see NMC Enterprises, Inc. v. Columbia Broadcasting System, Inc.,* 14 UCC Rep. Serv. 1427 (Sup.Ct.N.Y.Co.1974) . . . ." *Sperry, supra,* 670 F.2d at 12.

What confronts us here is exceptional. The potential for harm to these plaintiffs far exceeds even the situation where an able-bodied person is forced into bankruptcy. Here, some of the most infirm (yes, even helpless) members of our society—the poor, elderly and physically and/or mentally distressed—are threatened with sudden deprivation of their primary or exclusive source of income. To consider a potential future monetary award adequate compensation for these losses would be to ignore all practical realities of the subsistence of life itself. A recoupment in such fashion comes entirely too late, for any reduction in these benefits may cause a real and imminent loss of food, shelter and other basic necessities imperative for the continuation of human existence. And what of interests and costs—might they not be in the offing at some future state of the proceedings? Our Circuit Court has pointed the way:

> "A plaintiff asking for an injunction . . . is not required to show that otherwise rigor mortis will set in forthwith; all that 'irreparable injury' means in this context is that unless an injunction is granted, the plaintiff will suffer harm which cannot be repaired."

*Studebaker Corp. v. Gittlin,* 360 F.2d 692, 698 (2d Cir.1966).

As we see it, that is exactly so in this case, for indeed the complaint relates to legions who "will suffer harm which cannot be repaired."

Plaintiffs have also satisfied the second part of the test of injunctive relief and have shown that there are "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc., supra,* 596 F.2d at 72. The Government is properly concerned with the financial stability and continuation of legislatively mandated programs; plaintiffs are properly concerned with ongoing receipt of their subsistence incomes. These are "serious questions" which deserve full and thorough consideration. *See generally Philpott v. Essex County Welfare Board,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 590. (1973); *Tidwell v. Schweiker,* 677 F.2d 560 (7th Cir.1982); *Deary v. Guardian Loan Co.,* 534 F.Supp. 1178 (S.D.N.Y.1982).

In the interim, however, plaintiffs face an overwhelmingly greater hardship than the Department of Health and Human Services. Although in December, 1981 there was an approximately $1 billion nationwide debt attributable to SSI overpayments, only $214 million of this amount represented SSI debt cases in the "delinquent" or "deferred" status like that of the plaintiffs. The contested dollar amount is even less if one considers only the New York State beneficiaries who plaintiffs seek to represent. Although the record fails to disclose the number of SSI overpayment cases in New York and the amount of money claimed by defendants in these cases, its significance would surely be minuscule when compared to the human tragedy of elderly and disabled people deprived of their subsistence incomes. The equities forcefully and decidedly tip in favor of

plaintiffs. To assert otherwise would ignore their true plight.[50]

* * *

■ Plaintiffs also seek, pursuant to Fed. R.Civ.P. 23, an order certifying this action as a class action. We reject the Government's argument that plaintiffs lack standing for want of an injury. *See* Government's Memorandum in Opposition, filed September 10, 1982, pp. 42–47. The intervening plaintiffs allege a concrete monetary loss due to SSI "debt" deductions from their OASDI benefits. In addition, these intervenors share with the original five plaintiffs similar emotional harm allegedly caused by the Social Security Administration's coercive debt collection practices. These allegations constitute sufficient injury in fact to satisfy the standing requirements of Article III. *See generally United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1974).

The prerequisites to the maintenance of a class action remove all doubt:

"(1) the class is so numerous that joinder of all members if impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to meeting the four conjunctive requirements of 23(a), a class action must also qualify under one of the three subdivisions of 23(b)." [51]

Fed.R.Civ.P. 23(a); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 162–63, 94 S.Ct. 2140, 2145–2146, 40 L.Ed.2d 732 (1974). *See also Feinstein v. Firestone Tire and Rubber Co.,* 535 F.Supp. 595 (S.D.N.Y.1982).

■ The proof with regard to the first element to be considered—numerosity—is overwhelming. It is, of course, unnecessary for plaintiffs to allege a precise number of plaintiffs to be included in the proposed class. *See, e.g., Deary v. Guardian Loan, supra.* There are 2.8 million OASDI recipients and over 300,000 SSI recipients in New York State. *See* Declaration, Cynthia Merzen, dated July 12, 1982. The well-founded inference is that a significant number of these persons have been or will be subject to the same cross-program recoupment procedures as the named representatives. Ad-

---

**50.** In a case of striking similarity, the United States District Court for the District of Massachusetts enjoined the defendants in this action from sending to Massachusetts Social Security recipients the very notices at issue here. Further, that court enjoined defendants from "sending any notices to class members in Massachusetts concerning new procedures, forms, or obligations concerning collection of SSI overpayments . . . until the Court approves any and all such notices. . . ." Order, *Phillips v. Schweiker,* No. 82–2399–6, dated September 21, 1982.

**51.** Fed.R.Civ.P. 23(b) reads:
"(b) CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
 (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of

the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

ditionally, potential plaintiffs are widely dispersed throughout the state and it would be difficult, if not impossible, for plaintiffs to learn the identities and addresses of such persons. Thus, joinder is impracticable. See *DeMarco v. Edens,* 390 F.2d 836, 845 (2d Cir.1978); *Frost v. Weinberger, supra,* 515 F.2d at 65; *Lloyd v. Industrial Bio-Test Labs,* 454 F.Supp. 807, 812 (S.D.N.Y.1978).

■ The next element—the existence of common questions of fact and law—requires little analysis. Each of the proposed members of the class has previously received SSI benefits and currently receives OASDI benefits. Each has received written or oral notice of defendants' intention to recoup alleged SSI overpayments from current OASDI benefits. It is quite evident that hardly any class member can afford this reduction, and none has been given a meaningful opportunity to make an informed decision. The common legal questions are simply whether defendants' practices violate the provisions of the Social Security Act and the due process clause of the Constitution.

■ Since the proposed intervening plaintiffs present questions of fact and law virtually identical to those of the original plaintiffs, the application to intervene is granted in all respects. See *Swift v. Toia,* 450 F.Supp. 983 (S.D.N.Y.1978), *aff'd, Swift v. Blum,* 598 F.2d 312 (2nd Cir.1979), *cert. den., Blum v. Swift,* 444 U.S. 1025, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980). Like the original plaintiffs, the intervenors are current OASDI recipients, former SSI beneficiaries, and subject to the Social Security Administration's debt recovery program. Their intervention will not detract from the original plaintiffs' case; actually it will add to the Court's understanding of the facts. Specifically, their intervention will in all likelihood illustrate several cases in which OASDI beneficiaries responded to the Social Security Administration notices by authorizing reductions in their benefits, and consequent monetary loss. See *Bass v. Richardson,* 338 F.Supp. 478, 492 (S.D.N.Y.1971)

(intervention granted where intervenors in position to inform court of relevant facts).

Since it is still early in the course of this litigation, and the intervenors and original plaintiffs are represented by the same counsel, it does not appear that intervention will delay or prejudice the rights of the original plaintiffs. See *Rivers v. Califano,* 86 F.R.D. 41 (S.D.N.Y.1980).

■ Plaintiffs have easily met the third and fourth prerequisites for class certification: the claims of the representative parties are typical of the class, and the representative parties will fairly and adequately protect the interests of the class. See 7 Wright & Miller, *Federal Practice and Procedure* § 1764 (1972).

Indeed, the named plaintiffs' claims (notwithstanding varying amounts of SSI and OASDI payments) are substantially similar to those of the class as a whole. See *Cutner v. Fried,* 373 F.Supp. 4, 13 (S.D.N.Y.1974), *cause dism'd,* 71 F.R.D. 538 (S.D.N.Y.1976). Simply stated, there is a class-wide common interest in lawful administration of Social Security programs; informed, noncoercive recipient decisionmaking; and continued payment of benefits to which recipients are entitled.

■ Finally, plaintiffs assert and we agree that certification is appropriate under Fed.R.Civ.P. 23(b)(2). This rule allows a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Id.*

Plaintiffs correctly note that defendants "are issuing the same or similar notices, or orally giving the same information as is contained in the notices, to all members of the class. They are seeking assignment of . . . exempt OASDI benefits from all members of the class. . ." making declaratory and injunctive relief entirely warranted. See Plaintiffs' Memorandum in Support, dated August 6, 1982, p. 49. Indeed, the internal contradictions of defendants' poli-

cies[52] concerning their "debt" collection practices and procedures makes clear that injunctive relief to all members of the class is "appropriate." Fed.R.Civ.P. 23(b)(2).

Therefore, class certification is granted to "all persons in New York who currently receive OASDI benefits pursuant to 42 U.S.C. § 401 *et seq.* who are former recipients of SSI payments pursuant to 42 U.S.C. § 1381 *et seq.,* and who have been or will be informed [either orally or in writing] that they must refund alleged overpayment of SSI benefits, either by direct repayment or by agreeing to recovery of the overpayment from their monthly OASDI benefits." *See* Plaintiffs' Memorandum in Support, dated August 6, 1982, p. 44.

## Conclusion

As it appears to us, it should be expected that, under the special circumstances here revealed embracing the vast majority affected by defendants' procedures, there is bound to ensue a sharp increase in the amount and degree of physical and mental illness affecting such recipients, accompanied by anguish precipitated and even pushed to the breaking point—to say nothing of the staggering cost increase entailed by the Government.

 Accordingly, we have no alternative: On the facts here presented and the law applicable thereto we are compelled to, and do, grant the applications for a preliminary injunction, intervention and class certification. Settle order on three (3) days notice.[53]

---

**52.** *See* pp. 7–11, *supra.*

**53.** Because plaintiffs are proceeding *in forma pauperis,* the requirement of a bond is waived.

*See* Order, *Ellender v. Schweiker,* No. 82 Civ. 4816, filed July 22, 1982; Order to Show Cause, *Ellender v. Schweiker,* No. 82 Civ. 4816, filed August 16, 1982, p. 4; Fed.R.Civ.P. 65(c).