**Brenda McNEILL, et al., on behalf of themselves and all other persons similarly situated, Plaintiffs,**

v.

**The NEW YORK CITY HOUSING AUTHORITY, et al., Defendants.**

No. 88 Civ. 5870 (JMW).

United States District Court, S.D. New York.

Aug. 14, 1989.

238

John Kirklin, Director of Litigation, Legal Aid, Civil Appeals & Law Reform Unit (Scott Rosenberg, of counsel), The Legal Aid Soc., Ann Moynihan, Attorney-in-Charge (Annette DePalma, David Frazer, of counsel), New York City, Brooklyn Legal Services, Corp. B, John Grey, Project Director (Russell Engler, David Pieragostini, of counsel), Brooklyn, N.Y., for plaintiffs.

Manuel H. Quintana, Gen. Counsel (Brenda Spears, Raphael Samuel, Harry Steinberg, Robert Graziano, Beth Rosen, of counsel), New York City, for defendant NYCHA.

Gerald Dunbar, New York City, for defendant Annico Development Corp.

Gutman, Mintz, Baker & Sonnefeldt, Richmond Hill, N.Y., for proposed defendant Fulton Park Assocs. No. 4.

WALKER, District Judge:

Plaintiffs, all low-income tenants in New York City, challenge the policies and practices employed by defendant New York City Housing Authority ("NYCHA") when federal "Section 8" housing subsidies are suspended or terminated because of their landlords' failure to make repairs to their apartments. In sum, they claim that NYCHA's failure to provide adequate notice, opportunities for pre-termination hearings, and assistance in locating housing violate due process guarantees and federal housing regulations, and virtually assure that plaintiffs will live under a continued threat of eviction for their landlords' failures, over which they have little or no control.

Plaintiffs also challenge their landlords' actions undertaken pursuant to such policies and seek to enforce their individual housing contracts. Ultimately, plaintiffs seek injunctive relief, declaratory relief, and damages against their landlords and NYCHA.

Plaintiffs and eight proposed plaintiff-intervenors move now for intervention, pursuant to Fed.R.Civ.P. 24(b)(2), joinder, pursuant to Fed.R.Civ.P. 19(a) and 20(a), class action certification, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(1) or 23(b)(2) and preliminary injunctive relief, pursuant to Fed.R.Civ.P. 65. Defendant Annico Development Corporation cross-moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

For the reasons stated below, plaintiffs' motions for intervention, joinder and class action certification are granted. The class shall be composed of all tenants participating in the Section 8 "Existing Housing" assistance program whose assistance has been or will be terminated by NYCHA because of the landlord's failure to make repairs to an apartment. Additionally, the Court grants plaintiffs' motion for a limited preliminary injunction enjoining the named and joined defendant landlords from suing or recovering from such tenants amounts greater than the tenants' share of rent for their apartments under their most recent Section 8 contracts. The Court also grants Annico's motion for judgment on the pleadings in part.

## I. BACKGROUND

### A. The Section 8 Program

The federal lower-income housing assistance program, known as Section 8 ("Section 8"), 42 U.S.C. § 1437f, was designed to encourage the maintenance of low-income housing units by private landlords at federal, state, and city housing code standards of health and safety. Under this program, qualifying low-income families receive housing assistance in the form of a rent subsidy paid directly to their respective landlords. Upon approval for Section 8 participation, the applicant is issued a Family Participation Certificate ("certificate"),

and instructed to locate an apartment which is acceptable under the Section 8 criteria, as set forth in 24 C.F.R. § 882.109 and § 882.209(h).[1]

Once the Section 8 participant locates an apartment, the local Section 8 administrator, in this case NYCHA, must make an initial inspection of the premises to determine whether it is, at the outset, acceptable under the applicable housing codes and standards. If the apartment is approved, Section 8 participation is formalized in two separate contractual agreements: a lease agreement between the private landlord and her tenant; and a Housing Assistance Payments contract (the "HAP contract") between the landlord and NYCHA.

The standard Section 8 lease, which is prepared and authorized by NYCHA, provides that:

> The landlord at his own cost and expense shall make all repairs to the premises ... and shall maintain the building ... and each and every part thereof ... in good repair and in decent, safe and sanitary condition, in compliance with the requirements of all applicable Federal, State and City statutes, codes, ordinances, regulations and standards now or hereinafter in effect with regard thereto.

By the terms of the HAP contract, the landlord agrees to:

> maintain and operate the contract unit ... to provide decent, safe, and sanitary housing in accordance with 24 C.F.R. § 882.109, including the provision of all the services, maintenance and utilities set forth in the lease. If [NYCHA] determines that the owner is not meeting one or more of these obligations, [NYCHA] shall have the right, in addition to its other rights and remedies under this contract, to terminate or reduce housing assistance payments or to terminate this contract.

NYCHA also has continuing responsibilities with respect to Section 8 apartments. In addition to making monthly subsidy payments to the landlords, NYCHA is obliged to make annual inspections of the apartment for the duration of the tenancy, to ensure that the premises continue to conform to the applicable housing standards. 24 C.F.R. § 882.116. If an inspection reveals housing quality violations, NYCHA sends the following notice to the landlord, and a copy to the tenant:

> On _____, a member of our staff inspected the building and found the following serious deficiencies, causing the building and/or apartment to no longer be decent, safe, and sanitary:
> All hazardous conditions must be corrected within 24 hours of your receipt of this letter. All the remaining deficiencies enumerated above must be corrected by _____. If they are not, it is our intention to suspend the Section 8 Housing Subsidy in its entirety, assist the family to find other housing, and cancel the contract for this apartment, with no further notice to you.
> Furthermore, our inspection also indicated the following necessary repairs and corrections, which must be completed within thirty (30) days of this letter.
> If you have any questions in reference to this matter, please telephone me immediately at _____.

If the landlord fails to make repairs within the time allowed, NYCHA sends a substantially similar follow-up notice to the landlord, and the following letter to the tenant:

> Since your landlord has failed to make the necessary repairs to your apartment, despite our notification to him thereof, the subsidy for your apartment is being terminated as of _____.
> If your landlord fails to make the necessary repairs within sixty days, it will be necessary for you to find another acceptable apartment if you wish to remain in the NYCHA Section 8 Program. In order to do this, you require a Certificate of Family Participation. In order to arrange to obtain one, please telephone me immediately at _____. However, be sure to remember that you should not

---

1. The certificate is valid for sixty days, and may be extended to 120 days upon request. 24 C.F.R. § 882.209(d).

move to any new apartment until the Section 8 leases are approved by us.

If your landlord fails to make the necessary repairs and you do not find another suitable apartment, it will be necessary for us to terminate your participation in our Section 8 Program. If you have any questions in reference to this matter, please contact me.

Of course, if the necessary repairs are made, please notify us immediately.

Before Section 8 landlords may sue their tenants for eviction or collection of rent, they must obtain permission from NYCHA.

## B. The Main Action

Plaintiffs, Section 8 tenants, have brought this action to challenge NYCHA's policies and practices detailed above. In sum, they allege that NYCHA's policies and procedures concerning the suspension and termination of subsidies upon the failure of the landlord to properly maintain the premises violate the United States Housing Act, 42 U.S.C. § 1437, federal regulations, and due process of law. The amended complaint alleges that:

(1) NYCHA's policy and practice of suspending or terminating the HAP Contract before exhaustion of other remedies for obtaining compliance with minimum Housing Quality Standards violate 24 C.F.R. §§ 882.211(c), 882.-116(p), 882.109; HUD Handbook ¶¶ 5-9, 5-10; and 42 U.S.C. § 1437, for which a cause of action is created by 42 U.S.C. § 1983;

(2) NYCHA's policy and practice of suspending or terminating Section 8 benefits because of non-hazardous conditions in an apartment, even after all hazardous conditions have been corrected, violate 24 C.F.R. § 882.109 and 42 U.S.C. § 1437, for which a cause of action is created by 42 U.S.C. § 1983;

(3) NYCHA's policy and practice of failing to assist tenants in locating alternative eligible housing when a HAP Contract is terminated violate HUD Handbook 5-9, 5-10, for which a cause of action is created by 42 U.S.C. § 1983;

(4) NYCHA's policy and practice of issuing insufficient and materially misleading notices of suspension or termination violates 42 U.S.C. § 1437d(k)(1); HUD Handbook 7420.7 ¶¶ 5-9(b)(2), 5-10; 24 C.F.R. § 882.209(c)(4), (5), 882.116(f)(1); and the due process clause of the Fourteenth Amendment to the United States Constitution, for which a cause of action is created under 42 U.S.C. § 1983;

(5) NYCHA's policy and practice of suspending or terminating HAP Contracts based upon the landlords's alleged violation of Housing Quality Standards without affording the tenant an opportunity to review or challenge the Authority's determination, 42 U.S.C. § 1437d(k) and the due process clause of the Fourteenth Amendment to the United States Constitution, for which a cause of action is created by 42 U.S.C. § 1983.

In addition, plaintiffs bring three federal claims against defendant landlords, alleging that:

(1) the actions of defendant landlords in seeking to collect rental payments from plaintiffs in excess of the tenant's rental share violates the Brooke Amendment to the United States Housing Act, 42 U.S.C. § 1437a, and federal regulations, 24 C.F.R. § 813.107;

(2) the failure cf defendant landlords to maintain their apartments in proper repair violates federal housing quality standards, 24 C.F.R. § 882.109;

(3) the failure of defendant landlords to maintain their apartments in proper repair violates the HAP contracts with NYCHA, of which plaintiffs allegedly are intended third-party beneficiaries.

Moreover, plaintiffs bring pendant claims against the defendant landlords, alleging violation of landlord/tenant Section 8 lease agreements and warranty of habitability under New York State Law, N.Y.Real Prop.Law § 235-b(1).

Plaintiffs seek class action certification and declaratory and injunctive relief (a) enjoining NYCHA from suspending or terminating Section 8 assistance pursuant to the allegedly unlawful procedures, and (b) enjoining defendant landlords from the allegedly unlawful activity. Moreover, they seek monetary damages against both NYCHA and the defendant landlords based on NYCHA's alleged wrongful suspension or termination of housing assistance, and on the landlords' alleged failure to adequately maintain the apartments.

All named plaintiffs have settled in this case except McNeill and Johnson.[2] The remaining plaintiffs are currently being sued for eviction by their respective landlords in the Housing Part of the New York City Civil Court ("housing court"). Their landlords seek recovery of the apartments as well as rent subsidies which were withheld by NYCHA during a period in which the apartments were allegedly in disrepair.

### C. Proposed Plaintiff-Intervenors

The proposed plaintiff-intervenors, all Section 8 participants threatened with eviction proceedings, seek to bring the same claims against NYCHA and their respective landlords. The intervenors are described in moderate detail below, in order to demonstrate their stake in this action. Eight have been sued for eviction by their respective landlords, and these actions were scheduled for trial before the summer.

Willie Mae Davis is a 68-year-old disabled woman who lives alone at 10226 185th Street, Apt. # 2, Queens, New York. She suffers from diabetes, heart disease, kidney disease, and arthritis. She receives kidney dialysis three times each week. Her monthly income is $531.91. Her land-

lord is proposed defendant Four-H Associates, Inc. ("Four-H").

Davis' Section 8 lease agreement is identical to that of all other Section 8 participants whose benefits are administered by NYCHA except that her monthly rent is $319.50, $288.50 of which is payable by NYCHA.

In June, 1987 NYCHA notified Four-H's predecessor, Arnold Greenspan, that Davis' apartment had leaky windows and was due for repainting. Four-H was given thirty days in which to remedy the listed deficiencies. A copy of this notice was forwarded to Davis without additional explanation.

The listed deficiencies were not repaired within thirty days, and on September 30 NYCHA notified Davis that her Section 8 subsidy would be terminated on October 31. A substantially similar notice was sent on October 19, along with a new Section 8 Family Participation Certificate. By its terms, the certificate was valid only if Davis were to find a vacant one-bedroom apartment in good repair, renting below $389 per month, excluding gas and electricity, within sixty days. Davis could not or would not find such an apartment.[3]

NYCHA ultimately terminated its contract with Four-H without notice to Davis. In September, 1988 Four-H replaced the leaky windows, and in November, 1988 Four-H sued Davis in housing court to collect the full contract rent for her apartment, retroactive to July, 1988, plus legal fees.

Verona Sealy is a 59-year-old widow who lives alone in a four-bedroom apartment at 422 East 93rd Street, Apt. # 2R, Brooklyn, New York. She suffers from grand mal epilepsy, chronic allergic rhinitis, and arthritis. Her monthly income is $438.62. Her landlords are proposed de-

**2.** Plaintiff Cavaliere has been reinstated in the Section 8 program by NYCHA, although no retroactive payments have been made to her landlord. The landlord has threatened to sue Cavaliere for the amount of subsidy withheld by NYCHA during the period the apartment was allegedly in disrepair. NYCHA has agreed orally to reinstate Plaintiff Chan into Section 8 and make the retroactive payments to her landlord. With respect to Deckter's claims, the landlord

has agreed to drop its eviction proceedings and its suit for withheld subsidies against Deckter. Deckter has relocated to other housing.

**3.** Plaintiffs' briefs do not actually allege that Davis tried to find a new apartment. Rather, the briefs suggest that she did not look out of her sense of discouragement concerning the availability of low-income housing in New York City. Davis Decla., ¶ 14.

fendants Leroy and Ruthel Richardson. Sealy's lease agreement is identical to that of other Section 8 tenants except that her monthly rent is $349.42, $267.42 of which was payable by NYCHA.

On December 16, 1985 NYCHA informed the landlords that the Sealy apartment was missing a window pane and due for repainting. The notice stated that the substandard conditions must be corrected by December 31. The landlords did not make the designated repairs by the given date, and NYCHA informed them that the housing subsidy would be terminated as of January 31, 1986.

Sealy allegedly received permission from Ruthel Richardson to make the repairs herself, and to withhold monies from her share of the rent in order to do so. Sealy alleges that the repairs were completed by August, 1986, at which time she requested that NYCHA resume payment of subsidies to her landlords.

Although NYCHA inspected the newly-repaired apartment, in October NYCHA sent Sealy a new Section 8 certificate. The certificate was valid only if Sealy found a vacant, one-bedroom apartment in good repair renting below $423 per month, within sixty days. Sealy alleges that she vigorously sought such an apartment, but found none. She further alleges that NYCHA provided no assistance. NYCHA ultimately terminated both the HAP contract with Sealy's landlords, and Sealy's participation in the Section 8 program. Sealy's landlords have initiated proceedings in housing court to evict her and collect the full contract rent retroactive to June 1, 1987.

Loudella Frazier lives with her husband and two grandchildren in a three-bedroom apartment at 120 Chauncey Street, Apt. # 1A, Brooklyn, New York. Her landlord is proposed defendant Fulton Park Associates # 4 ("Fulton"). Frazier's Section 8 lease provides that the total monthly rent for her apartment is $563, $96 of which is payable by NYCHA. In all other respects, her lease agreement is identical to those signed by other Section 8 tenants.

On July 2, 1986 NYCHA sent a letter to Fulton listing housing quality deficiencies, including a hole in the bathroom wall, missing tiles, cracks in the living room floor, and a broken kitchen cabinet. The notice stated that unless the repairs were made by July 12, housing subsidies would be suspended.

In November, 1986 NYCHA informed Frazier that subsidies would be terminated as of December 1, 1986. Furthermore, if the outstanding repairs were not made within sixty days, Frazier would need to find another apartment in order to remain a Section 8 participant. Enclosed was a new Section 8 certificate, valid only if Frazier could find a vacant three-bedroom apartment in good repair renting below $623 per month within sixty days.

On April 6, 1988 NYCHA notified Frazier that her Section 8 assistance was terminated retroactively as of October 31, 1986. Shortly thereafter Frazier received a new Section 8 certificate, valid only if she found a suitable, alternative apartment within sixty days. She alleges that she was unsuccessful both in her search for a new apartment and in her requests for assistance from NYCHA. Sometime thereafter NYCHA terminated its contract with Fulton.

In November, 1988 Fulton commenced eviction proceedings against Frazier, seeking the full contract rent retroactive to July, 1987.

Marilyn Bailey lives with her three children in a three-bedroom apartment at 94 Chauncey Street, Apt. # 2D, Brooklyn, New York. Her landlord is proposed defendant Fulton Park Plaza Associates. Her lease is identical to those of other Section 8 tenants except that her monthly rent is $471, $126 of which is paid by NYCHA.

In April, 1987 NYCHA notified the landlord of several unsatisfactory conditions in the apartment—a broken kitchen cabinet, a missing bathroom light and a missing bedroom door. On June 4, 1987 NYCHA notified both landlord and tenant that Section 8 subsidies would be terminated as of June 30, 1987.

In February, 1988 an employee of NYCHA allegedly instructed Bailey to contin-

ue to pay only her portion of the rent. On April 7, 1988 NYCHA notified Bailey that subsidies had in fact been terminated on June 30. Shortly thereafter she received a new Section 8 certificate, valid only if she found a suitable apartment within sixty days. Bailey alleges that she could find no adequate, alternative housing and that NYCHA failed to assist her in her efforts to do so.

On November 17, 1988 Bailey obtained a court order requiring that the landlord make the repairs. At about the same time, Bailey's landlord commenced an action in housing court for eviction for nonpayment of rent. The landlord seeks to collect the full contract rent retroactive to September, 1988 plus legal fees.

Charlotte Jones lives with her two children at 220 Montgomery Street, Apt. # 7B, Brooklyn, New York. Jones' monthly income is approximately $390. Her landlord is proposed defendant Fieldbridge Associates ("Fieldbridge"). According to her Section 8 lease agreement, her monthly rent is $400, $283 of which is payable by NYCHA.

In April, 1988 Fieldbridge initiated proceedings in housing court to evict Jones for nonpayment of rent. At that time Jones learned that NYCHA had suspended payment of subsidies to Fieldbridge. She alleges that, upon her inquiry to NYCHA, she was told that the subsidies were discontinued due to a water leak in her bathroom. Jones alleges that the leak was in fact repaired in March, 1987.

Jones' landlord is currently suing her to collect the full contract rent retroactive to February, 1988, plus legal fees. The landlord has allegedly agreed to accept Section 8 payments prospectively only if the retroactive subsidies are paid by NYCHA.

Pearlie Sloan lives with her two children at 131 Vernon Avenue, Apt. # 4, Brooklyn, New York. Her lease agreement provides that monthly rent is $340, $282 of which is payable by NYCHA.

Based on an inspection made during the spring of 1987, NYCHA notified Sloan that if the listed substandard conditions were not rectified, Section 8 subsidies would be discontinued. At some point during the Fall of 1987 subsidies were in fact suspended and Sloan received a new Section 8 certificate.

Sloan alleges that she attempted to find another apartment that was acceptable for Section 8 participation, but was unsuccessful. She also alleges that NYCHA provided no assistance in her search. NYCHA has since discontinued her participation in the program.

In December, 1988 Sloan's landlord initiated proceedings in housing court to evict her for nonpayment of rent, and to collect the full contract rent retroactive to January, 1988.

Muriel McKensie, 70 years old, lives alone at 585 East 32nd Street, Apt. # 31, Brooklyn, New York. Her landlord is proposed defendant 585 Realty Co. According to her Section 8 lease agreement, her monthly rent is $355.08, $239.08 of which is to be payable by NYCHA.

In January, 1986 NYCHA notified McKensie's landlord that rodent infestation, water damage to the ceiling, and a hole in the living room floor, among other less serious conditions, required attention. The notice further stated that if the hazardous conditions were not repaired within twenty-four hours, and all other faulty conditions remedied before February 3, Section 8 subsidies would be terminated.

On May 15, 1986 NYCHA sent a second notice to both McKensie and her landlord, demanding that all outstanding repairs be made by May 23. On July 2 NYCHA informed McKensie that subsidies would be terminated as of August 1. In December, 1986 NYCHA sent McKensie a new certificate, valid only if she could find another Section 8–suitable apartment, renting below $330 per month, within sixty days.

McKensie alleges that she tried and failed to find such an apartment. McKensie commenced an action in housing court, *pro se*, against her landlord to compel the correction of code violations in her apartment. She obtained a favorable order and by July, 1987 the landlord had complied. McKensie alleges that, at that time, NY-

CHA agreed to resume payment of subsidies to the landlord.

On August 6, 1987 the landlord commenced a suit against McKensie, seeking to collect the subsidies withheld by NYCHA. On October 19, 1987 final judgment was entered in the landlord's favor, and a warrant for McKensie's eviction was issued. Although the judgment and warrant have since been vacated, McKensie alleges that the landlord continually threatens to restart eviction proceedings.

Suester Richardson lives with her daughter at 1035 Washington Avenue, Apt. # 4S, Brooklyn, New York. The monthly household income is $691. Her landlord is proposed defendant 1035 Washington Avenue Associates ("Washington"). Her lease provides that the monthly rent is $495.29, $250.29 of which is payable by NYCHA.

In August, 1986 a NYCHA inspector noted several deficiencies in the apartment—a missing bathroom sink faucet, water damage to a bedroom wall, a hole in the bathroom floor and the need for repainting. NYCHA notified Washington that subsidies would be terminated if the repairs were not made. A copy of the notice was sent to Richardson.

On September 15, 1986 NYCHA informed Richardson that subsidies would be discontinued as of September 31, 1986 unless the repairs were made. However, a third notice stated that subsidies had in fact been terminated as of August 31, 1986, several weeks prior to the date of the original notice. This letter further stated that if the specified repairs were not made within sixty days, Richardson would have to find another apartment in order to continue participation in the Section 8 Program.

Although the bathroom repairs were allegedly completed and inspected by NYCHA by October 10, NYCHA notified Richardson on October 28 that her Section 8 subsidy was terminated retroactively as of September 30—one month prior to the date of the letter. Enclosed was a new Section 8 certificate.

Richardson alleges that she notified NYCHA that the repairs had been substantially made. She further alleges that, in February or March, 1987, a NYCHA employee advised her that so long as she continued to pay her portion of the rent, she could not be evicted. Washington has asked NYCHA for permission to sue Richardson for alleged rent arrears, and this request is currently under consideration.

## II. DISCUSSION

### A. Standing and Right to Bring Federal Claims

#### 1. Claims Against NYCHA

■ Plaintiffs have brought several federal claims against NYCHA for which a cause of action is created by § 1983. As a threshold matter, the Court must determine whether plaintiffs have standing to maintain these claims. It is fundamental that "Article II of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). A federal litigant has standing to assert her claim upon a showing that: (1) She has personally "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), *quoting Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); (2) the alleged injury is reasonably traceable to the challenged action; *id., quoting Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); and (3) the alleged injury is "likely to be redressed by the requested relief." *Allen*, 468 U.S. at 751, 104 S.Ct. at 3324. In applying these concepts, the examining court frequently asks the following questions: "Is the injury too abstract, or otherwise not appropriate to be considered judicially cognizable? Is the line of causation between the illegal conduct and the injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too specu-

lative?" *Allen,* 468 U.S. at 752, 104 S.Ct. at 3325.

■ Under the *Valley Forge* test, plaintiffs clearly have standing to assert their claims against NYCHA. Reading plaintiffs' amended complaint in the most favorable light, as the Court is bound to do at this stage of litigation, the Court finds that plaintiffs have alleged an injury in fact which satisfies the first prong of the standing analysis—their loss of Section 8 assistance and the imminent threat of eviction. In particular, plaintiffs allege that their Section 8 assistance has been terminated without an opportunity to challenge it and pursuant to inadequate and materially misleading notices. They further contend that NYCHA failed to exhaust other means short of termination for obtaining compliance with housing quality standards and failed to assist them in locating alternative eligible housing as required by federal law.[4] As a result, plaintiffs have lost their Section 8 benefits and have become threatened by or entangled in eviction proceedings commenced by their landlords to collect rent past due—an amount that includes the Section 8 subsidies withheld by NYCHA.

■ The second and overlapping area of inquiry is whether the subject injury is "fairly traceable" to the conduct of appellees. NYCHA alleges that plaintiffs' alleged injury is too remote and speculative to be fairly traceable to their conduct, because plaintiffs' loss of Section 8 assistance and eventual eviction proceedings cannot be fairly attributed to NYCHA's policies and practices. NYCHA suggests that plaintiffs' alleged injuries may be more fairly attributed to the actions of the defendant landlords. In advancing this argument, NYCHA either misreads or simply ignores plaintiffs' claims. Plaintiffs challenge NYCHA policies and practices which allow for the termination of Section 8 benefits without following all the steps required by federal law, and contend that NYCHA acts in violation of the United States Housing Act, federal regulations and due process of law. Plaintiffs argue that their terminations were unlawful, irrespective of the landlord's failure to maintain the apartment. Therefore, although a landlord's neglect of duty may have led to NYCHA's suspension or termination of benefits, there is a direct link between NYCHA's policies and practices and plaintiffs' injuries. *See generally Simon v. Kentucky Welfare Rights Organization,* 426 U.S. 26, 42–43, 96 S.Ct. 1917, 1926–27, 48 L.Ed.2d 450 (1976); *MacDonnell v. Immigration and Naturalization Service,* 693 F.Supp. 1439 (S.D.N.Y.1988).

■ Next, the Court must examine the "redressability" prong of the standing analysis, namely, whether there is a "causal connection between the alleged injury and the judicial relief requested." *Allen,* 468 U.S. at 753 n. 19, 104 S.Ct. at 3325 n. 19. The relief sought—including correction of allegedly defective notices and termination practices, reinstatement in the Section 8 Program and, where appropriate, payment of retroactive benefits—is reasonably calculated to redress their respective injuries. *See Muniz–Mendoza v. Pierce,* 711 F.2d 421, 425 (1st Cir.1983). Thus, plaintiffs have met the third and final part of the standing test and, accordingly, have standing to assert their claims against NYCHA.

2. Claims Against Private Landlords

It is undisputed that plaintiffs have standing to assert their pendent claims against their landlords, alleging breach of the terms and conditions of the Section 8 lease agreements and warranty of habitability. Plaintiffs' right to assert their federal claims against their landlords, however, is a matter of debate. Plaintiffs ground their federal claims against their landlords on two theories: first, that they have a private right of action under the Housing Act and Brooke Amendment and, second, that they may enforce their landlords' HAP contracts with NYCHA as intended third-party beneficiaries. The Court will examine each of these theories in turn.

4. For a more detailed summary of plaintiffs' claims, *see infra* at 240.

### a. Ability to Assert a Private Right of Action Under The Housing Act and Brooke Amendment

The Brooke Amendment, 42 U.S.C. § 1437a, provides that a Section 8 tenant shall pay no more than thirty percent (30%) of her income as rent. 42 U.S.C. § 1437a(a). Plaintiffs reason that, since the Amendment prohibits charges in excess of thirty percent of income, it prohibits a landlord from suing to collect more than the permissible amount. Accordingly, plaintiffs allege that if a landlord attempts to collect rent greater than thirty percent of the tenant's income, such an attempt is in violation of the Brooke Amendment.

█ The issue herein is whether there exists a private right of action to enforce the Amendment against private landlords, separate and apart from § 1983.[5] Factors used in determining whether Congress intended to create a private remedy are: (1) whether plaintiffs are in the class of persons Congress intended to benefit by enactment of the statute; (2) whether there is legislative intent either to deny or to provide a private remedy in light of the statute's legislative history; and (3) whether the existence of a private remedy would be consistent with the underlying purpose of the legislative scheme; and (4) whether the action is one more appropriately a concern of state rather than federal law. *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). A review of post-*Cort* decisions indicates that not all of these factors are to be given equal weight. "The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S.

560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979); *see also Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535–36, 104 S.Ct. 831, 837–38, 78 L.Ed.2d 645 (1984) (characterizing *Cort* factors collectively as indicia of legislative intent); *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979) (courts must "carefully analyze the four factors that *Cort* identifies as indicative of legislative intent").

█ Applying *Cort* and its progeny, the Court finds that there is little question that Section 8 participants, low-income tenants, are the intended beneficiaries of the United States Housing Act and the Brooke Amendment. The Housing Act's initial policy declaration states that it is intended "to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for *families of lower income.*" 42 U.S.C. § 1437. The substantive provisions of the Act that follow the policy statement also confer particular benefits on low-income tenants. In particular, the Brooke Amendment provides that tenants "shall pay as rent" the prescribed maximum percentages of their income. 42 U.S.C. § 1437a(a). Brooke Amendment provisions, as well as several other provisions of the Act,[6] are particular to "the benefit of a special class." *Cannon*, 441 U.S. at 689, 99 S.Ct. at 1953. Not surprisingly, several other courts have found that lower-income tenants are the "especial class" benefited under the Act. *See, e.g., Howard v. Pierce*, 738 F.2d 722, 725 (6th Cir.1984); *Falzarano v. United States*, 607 F.2d 506, 509 (1st Cir.1979); *Gonzalez v. St. Margaret's Housing Dev. Fund*, 620 F.Supp. 806 (S.D.N.Y.1985).

---

**5.** This issue has inspired considerable debate. However, to this Court's knowledge, no commentators have focused directly upon tenants' right to bring suit against *private landlords* directly under the Brooke Amendment. Instead, commentators, like all courts in this circuit, have considered only tenants' alleged private rights of action against H.U.D., public housing authorities, or publicly-funded housing projects. *See Beckham v. New York City Housing Authority*, 755 F.2d 1074 (2d Cir.1985); *Gonzalez v. St. Margaret's Housing Dev. Fund*, 620 F.Supp. 806 (S.D.N.Y.1985). *See also* Note, *Implied Private*

*Rights of Action Under the United States Housing Act of 1937*, 1987 Duke L.J. 915 (1987); Comment, *The Brooke Amendment: Does "Shall Pay as Rent" Give Tenants a Right to Sue?*, 37 Mercer L.Rev. 1087 (1986); Note, *Howard v. Pierce: Implied Causes of Action and the Ongoing Vitality of Cort v. Ash*, 80 NW.U.L.Rev. 722 (1985); Comment, *No Implied Cause of Action Under the National Housing Act: A Barrier to a Statutory Right*, 22 Urb.L.Ann. 249 (1981).

**6.** *See, e.g.*, 42 U.S.C. § 1437d(c)(4).

·While the first factor of the *Cort* test clearly is satisfied, the Housing Act and The Brooke Amendment are silent on the existence of private rights of action. Despite such silence, the Supreme Court recently found, in a 5–4 decision, *Wright v. City of Roanoke Development & Housing Authority*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), that tenants can maintain an action against local housing authorities, under § 1983, for alleged violations of Brooke Amendment. After careful review of administrative agency actions, Justice White found that Congress anticipated a scheme that would depend, in part, upon private enforcement. He stated:

> Not only are the Brooke Amendment and its legislative history devoid of any express indication that exclusive enforcement authority was vested in HUD, but also both Congressional and agency actions have indicated that enforcement authority is not centralized and that private actions were anticipated. Neither are the remedial mechanisms provided by the statute sufficiently comprehensive and effective to raise a clear inference that Congress intended to foreclose a § 1983 cause of action for the enforcement of tenants' rights secured by federal law.

*Wright*, 479 U.S. at 424–25, 107 S:Ct. at 771.[7]

Justice White thus reasoned in part that in order to effectuate the purposes of the Housing Act and Brooke Amendment, tenants must have the right to bring § 1983 actions. Plaintiffs would have this Court extend Justice White's reasoning to imply a private cause of action under the Brooke Amendment against private landlords that is separate and independently maintainable from a § 1983 action. The Court finds such an extension to be unwarranted on two grounds.

First, while tenants may need to bring § 1983 claims against local housing authorities in order to effectuate the very purpose of the Housing Act, the Court is unconvinced that they also need to bring affirmative Brooke Amendment claims against private landlords in federal court in order to effectuate the purposes of the Act. Second, and more importantly, this Court may not freely consider "the utility of a private remedy" since there is no evidence that Congress intended such an extension. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 12, 100 S.Ct. 242, 243, 62 L.Ed.2d 146 (1979). Nowhere does the legislative history indicate that tenants were to have private rights of action against private landlords. While "the failure of Congress expressly to consider a private remedy is not inevitably inconsistent with an intent on its part to make such a remedy available," *id.* at 18, 100 S.Ct. at 246, Congress' intent to allow the private right of action sought here also does not appear in the language or structure of the statute, or in the circumstances of or subsequent to its enactment.[8] Absent clearer indications of Congressional intent, this Court is not only unwilling but unable to imply a new private right of action. *Touche Ross & Co.*, 442 U.S. at 568, 99 S.Ct. at 2485; *Cannon*, 441 U.S. at 688, 99 S.Ct. at 1953.

Plaintiffs suggest that this Court is somehow bound by Judge Leval's decision

---

7. The Court proceeded to cite a number of examples of "congressional and agency actions" that appeared to show that Congress contemplated the availability of § 1983 actions under the Housing Act. The Court noted, for example, that in raising the Brooke Amendment's rent ceiling from 25 to 30%, Congress specifically exempted the five-year phase in rent increases by the Secretary of H.U.D. from judicial review. 479 U.S. at 425, 107 S.Ct. at 771.

8. The Court notes that the relative presumptions and levels of inquiry about congressional intent differ in the analysis of § 1983 and implied right of action problems. Generally, plaintiffs may seek relief, pursuant to § 1983, for violations of state actors of a federal statute that creates substantive rights in the plaintiffs, so long as Congress has not expressly or impliedly foreclosed § 1983 enforcement. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Under *Cort*, however, a court will imply a private right of action only when extensive analysis of congressional intent and the statutory scheme reveals that Congress expressly or impliedly contemplated private enforcement. *See* Note, *Implied Private Rights of Action Under the United States Housing Act*, 1987 Duke L.J. 915, 938 (1987).

in *Gonzalez v. St. Margaret's House Housing Dev. Fund,* 620 F.Supp. 806 (S.D.N.Y. 1985) to reach an opposite conclusion. In *Gonzalez,* an opinion issued two years *before Wright,* Judge Leval found that tenants had a private right of action to enforce the Brooke Amendment against a federally-funded housing agency. Even if *Gonzalez* controlled the present case, and it does not, it is inapposite. In *Gonzalez,* the defendant's construction was financed by a direct loan from H.U.D., pursuant to § 202 of the Housing Act of 1959, 12 U.S.C. § 1701q, and H.U.D. was a party to the suit. In contrast, the defendants in the present case are private landlords, not federally-funded housing projects, who merely lease some of their available apartments to Section 8 participants.

While under *Wright* tenants may bring Brooke Amendment claims against local housing authorities pursuant to § 1983, and may even be able to bring such claims against federally-funded housing projects,[9] the line is drawn at private landlords. If this Court were to fabricate such a private right of action in the absence of legislative intent, it would be undertaking the role of legislator, a role which it must decline.[10]

### b. *Ability to Enforce HAP Contracts as Intended Third–Party Beneficiaries*

Federal regulations require landlords that receive Section 8 housing subsidies to maintain their apartments in adequate repair. In particular, 24 C.F.R. § 882.109 explicitly requires that Section 8 apartments "shall meet" federal housing quality standards. To this end, 24 C.F.R. § 882.117(a) requires that the owner's responsibilities "shall include," among other things, "performance of all ordinary and extraordinary maintenance." These provisions have the force of law, *Chrysler Corp. v. Brown,* 441 U.S. 281, 312–13, 99 S.Ct. 1705, 1723–24, 60 L.Ed.2d 208 (1979), and

each landlord covenants with NYCHA to comply with these standards. Thus, ¶ 4(a) of the standard HAP contract between the landlord and NYCHA requires:

> The Owner agrees to maintain and operate the Control Unit and related facilities to provide Decent, Safe, and Sanitary housing in accordance with 24 C.F.R. Section 882.109, including the provision of all the services, maintenance and utilities set forth in the Lease....

Plaintiffs argue that they have standing to enforce this clause as its intended third-party beneficiaries. Plaintiffs contend that they satisfy the *Valley Forge* test since they have suffered some actual or threatened injury—denial of Section 8 assistance—as the result of defendant landlords' failure to abide by federal housing standards, and this injury is likely to be redressed by a decision in plaintiffs' favor.

This case concededly implicates federal common law, rather than state common law, because resolution of the issue of plaintiffs' status as third party beneficiaries requires a uniform rule and because financial obligations and important interests of the United States would be at stake. *United States v. Standard Oil Co.,* 332 U.S. 301, 307, 67 S.Ct. 1604, 1608, 91 L.Ed. 2067 (1947); *Holbrook v. Pitt,* 643 F.2d 1261, 1270 n. 16 (7th Cir.1981). The result would not change, however, if New York law governed. Under both federal common law and New York law, a third party may have enforceable rights under a contract if the contract was made for her direct benefit. *Crumady v. The Joachim Hendrik Fisser,* 358 U.S. 423, 428, 79 S.Ct. 445, 448, 3 L.Ed.2d 413 (1959); *Olzman v. Lake Hills Swim Club, Inc.,* 495 F.2d 1333, 1339 (2d Cir.1974); *Burns Jackson Miller v. Linder,* 59 N.Y.2d 314, 464 N.Y.S.2d 712,

---

**9.** *But see Howard v. Pierce,* 738 F.2d 722, 730 (6th Cir.1984) ("[W]hile Congress may have indicated an intention to allow suit against H.U.D. by waiving sovereign immunity, we have found no similar evidence of intent to allow an implied cause of action against a public housing authority."). Of course, at the present time the Court need not determine whether tenants may bring a cause of action against a public housing authority.

**10.** As the Court noted at oral argument, most of the underlying problems with the Section 8 program can only be addressed through legislative and administrative, not judicial action.

451 N.E.2d 459 (1983).[11] If the agreement was not intended to benefit the third party, however, she is viewed as an "incidental" beneficiary, having no legally cognizable rights under the contract. *Holbrook v. Pitt*, 643 F.2d 1261 (7th Cir.1981) (citations omitted); *Bonwell v. Stone*, 128 A.D.2d 1013, 513 N.Y.S.2d 547, 549 (3rd Dep't. 1987).

■ Applying these general principles, the Court finds that plaintiffs are intended third-party beneficiaries. This Court is persuaded by the reasoning of Judge Cudahy of the Seventh Circuit in *Holbrook v. Pitt*, 643 F.2d 1261 (7th Cir.1981), that "[i]f the tenants are not the primary beneficiaries of a program designed to provide housing assistance payments to low income families, the legitimacy of the multi-million dollar Section 8 program is in grave doubt." *Id.* at 1261.[12] The mutual promises contained in the HAP contracts were intended to benefit plaintiffs. Thus, to the extent that plaintiffs seek to enforce the portions of the HAP contracts which obligated landlords to comply with housing quality standards, as set forth in 24 C.F.R. § 882.109, plaintiffs have standing as third party beneficiaries to those contracts.[13]

In finding that plaintiffs are intended third-party beneficiaries, the Court does not open the door for all beneficiaries of government contracts to attempt to enforce such contracts. This case is limited to the facts at hand. Here plaintiffs are the sole and direct third-party beneficiaries of such contracts.[14] The individual HAP contracts were drawn specifically to secure housing for the tenants. If the landlord breaches the HAP contracts, and NYCHA fails to enforce them, both federal common law and New York common law dictate that the tenants should be able to undertake such enforcement themselves.

Moreover, ¶ 14 of the standard Section 8 lease signed by each landlord includes sim-

**11.** The New York Court of Appeals has stated that a third party may recover under a contract if the following elements are established: (1) the existence of a valid and binding contract between other parties; (2) that the contract was intended for the third party's benefit; (3) that the benefit to the third party is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty. 464 N.Y.S.2d at 722, 451 N.E.2d 470. *See also Port Chester Electric Construction Co. v. Atlas* 40 N.Y.2d 652, 389 N.Y.S.2d 327, 357 N.E.2d 983 (1976).

**12.** *Holbrook* is not directly analogous since it dealt with the Special Allocations component of the Section 8 program, under which H.U.D. enters into direct Section 8 assistance contracts with landlords who are also H.U.D.-insured mortgagors. Nevertheless, the Court's reasoning in *Holbrook* is applicable here. Judge Leval of this district similarly cited *Holbrook* with approval in *Gonzalez,* 620 F.Supp. at 810. *See also Concerned Tenants of Father Panik Village v. Pierce,* 685 F.Supp. 316, 323 (D.Conn.1988) (following *Holbrook*); *Ashton v. Pierce,* 716 F.2d 56, 66 (D.C.Cir.1983), *amended,* 723 F.2d 70 (D.C.Cir.1983). *But see Samuels v. District of Columbia,* 770 F.2d 184 (D.C.Cir.1985) (narrowing *Ashton*).

**13.** NYCHA argues that the language of the HAP contract as amended suggests that tenants are not third-party beneficiaries. For a number of reasons, this argument is misplaced. Contrary to this assertion, the new language does not clearly state that Section 8 tenants are not the intended third-party beneficiaries. Another reasonable interpretation of the new language is that NYCHA's satisfaction is a condition of the landlord's performance. Further, when the landlord signed the agreement with the NYCHA, both the landlord and NYCHA were well aware who would directly benefit from their agreement—the tenant. Even if the landlord and NYCHA could somehow close their eyes to this reality, the tenant would still be in fact the intended third party-beneficiary. As noted above, Congress' intent to make such tenants third party-beneficiaries is quite clear. Moreover, this argument does not apply to all plaintiffs or class members, since many plaintiffs and class members are beneficiaries of HAP contracts executed before 1983. *See, e.g.,* Chan Aff., Ex. B; McKensie Aff., Ex. A.

**14.** This case thus differs from unsuccessful tenant attempts to enforce agreements as third party beneficiaries. In these cases, there was either a lack of intent to benefit the tenants directly, another party was an intended beneficiary, or the intended beneficiary was somehow unidentifiable. *See, e.g., Price v. Pierce,* 823 F.2d 1114 (7th Cir.1987) (prospective tenants were not third-party beneficiaries of contracts between developers and state housing development authority); *Reiner v. West Village Associates,* 768 F.2d 31 (2d Cir.1985) (tenants were not third-party beneficiaries of agreement entered into between H.U.D. and project owners pursuant to H.U.D.'s mortgage insurance programs); *Falzarano v. United States,* 607 F.2d 506, 511 (1st Cir.1979); *Harlib v. Lynn,* 511 F.2d 51, 55–56 (7th Cir.1975).

ilar language and obligates the landlord to abide by the "requirements of all applicable Federal, state and City statutes, codes, ordinances, regulations and standards ..." *See infra* at 239; *see also* Davis Decl., Exh. A. Plaintiffs specifically allege that each landlord named in this action breached these provisions.

■ Plaintiffs are permitted to bring their pendent state claims since the federal claims to which plaintiff seeks to pend their state claims are substantial, and the state claims arise from a "common nucleus of operative fact" such that plaintiff "would ordinarily be expected to try them [both] in one judicial proceeding." *United Mineworkers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see 640 Broadway Renaissance Co. v. Cuomo*, 714 F.Supp. 686, 691 (S.D.N.Y.1989). Indeed, the landlord-tenant contracts that provide the basis for the state contract claims explicitly require the landlords to abide by the same set of federal regulations that are implicated in the federal claims. The state claims are deeply intertwined with the federal claims and arise out of the same NYCHA termination policies and practices.[15] In the interest of judicial economy and fairness to the paries, the Court exercises its discretion to hear the pendant-party claims.

### B. Intervention

The proposed plaintiff-intervenors move pursuant to Federal Rule of Civil Procedure 24(b)(2) for an order permitting them to intervene in the underlying action. Rule 24(b)(2) provides that one (or more) persons may intervene when her claim or defense shares a question of law or fact with the main action. Fed.R.Civ.P. 24(b)(2). Intervention pursuant to Rule 24(b)(2) is wholly at the discretion of the district court. *United States Postal Service v. Brennan*, 579 F.2d 188 (2d Cir.1978). In exercising its discretion, the district court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* at 191.

■ Rule 24(b)(2) is to be liberally construed. *Davis v. Smith*, 431 F.Supp. 1206, 1209 (S.D.N.Y.1977), *aff'd*, 607 F.2d 535 (2d Cir.1977). It is satisfied where a single common question of law or fact is involved, despite factual differences between the parties. *See* 7A C. Wright & A. Miller, Federal Practice and Procedure § 1924 at 473 (1972); *Ellender v. Schweiker*, 550 F.Supp. 1348, 1360 (S.D.N.Y.1982); *Swift v. Toia*, 450 F.Supp. 983 (S.D.N.Y.1978), *aff'd*, 598 F.2d 312 (2d Cir.1979), *cert. denied*, 444 U.S. 1025, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980).

■ Under this standard, it is clear that the prerequisites for Rule 24(b)(2) intervention are satisfied. The proposed plaintiff-intervenors' claims raise the same legal questions as the claims of the named plaintiffs—all claims concern the constitutionality of NYCHA's policies, procedures and implementation of Section 8. The individual claims do not turn on individual facts and circumstances. *See, e.g., Greer v. Blum*, 462 F.Supp. 619 (S.D.N.Y.1978). Furthermore, the proposed intervenors also allege that they have suffered injuries similar to those alleged by the named plaintiffs, and that all such injuries are the direct result of the challenged policies.

Moreover, as this motion to intervene has been made early in the litigation and the same counsel represents all named and proposed plaintiffs, undue delay, complication, or procedural difficulty remain unlikely. *See, e.g., Davis*, 431 F.Supp. at 1209; *Rivers v. Califano*, 86 F.R.D. 41, 44 (S.D.N.Y. 1980). It may even be the case that efficiency is promoted by intervention, as the proposed plaintiffs' claims may elucidate the peculiar difficulties allegedly visited on tenants by NYCHA policies.

NYCHA contends that intervention is unnecessary where, as here, the main action presents an issue of "law reform," and where it appears that intervention will not elucidate the matter. *See, e.g., Sidberry v. Koch*, 539 F.Supp. 413, 418 (1982). The

---

**15.** Moreover, Congress in the statutes conferring jurisdiction over the federal claims has not expressly or by implication negated the existence of jurisdiction. *See Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *640 Broadway, supra.*

case at hand, however, does not merely concern a prospective change in the law. The proposed plaintiff-intervenors seek retroactive relief—reinstatement in the Section 8 Program, and, in some instances, retroactive payment to their landlords of subsidies wrongfully withheld. Under these circumstances, intervention is not redundant.

NYCHA also objects to intervention on the ground that the named plaintiffs are unqualified to represent the proposed class, and that intervention for the purpose of positioning a qualified representative is impermissible. *See Washington v. Wyman,* 54 F.R.D. 266 (S.D.N.Y.1971). This argument is misplaced. As the Court notes in discussing the motion for class certification, the named plaintiffs, McNeill and Johnson, adequately represent the proposed class. Nonetheless, there is a real possibility in this case, as in any benefits dispute, that all of the named plaintiffs will be forced by their own personal circumstances to settle their individual claims during the course of prolonged litigation. If so, the underlying suspect policies will be left unchallenged. Intervention may indeed be appropriate where there is a possibility that the named plaintiffs may settle. *Cf. Arthur v. Starrett City Associates,* 98 F.R.D. 500, 505 (S.D.N.Y.1983); *Rivers v. Califano,* 86 F.R.D. 41, 46 (S.D.N.Y.1980). *See also Lidie v. State of California,* 478 F.2d 552, 555 (9th Cir.1973).

Furthermore, intervention is appropriate here since plaintiffs are precluded from obtaining the relief sought in the pending state court actions. As housing court lacks jurisdiction over NYCHA, pursuant to New York City Civil Court Act, N.Y. City Civ.Ct. Act § 110, it cannot effectively protect plaintiffs' rights. Housing court cannot order reinstatement of a tenant in the Section 8 Program, nor can it order NYCHA to resume the payment of subsidies to a landlord. Since housing court can provide only partial relief at best intervention is equitable and best promotes judicial efficien-cy. Thus, the Court will exercise its discretion and grant intervention.

### C. Joinder

■ Plaintiffs also move pursuant to Federal Rules of Civil Procedure 20(a) and 19(a) to join their respective landlords. Rule 20(a) provides for permissive joinder of defendants "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect to or arising out of the same transaction or occurrence, or the same series of transactions or occurrences, and if any questions of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a). Judgment may be rendered against one or more of the defendants according to their respective liabilities.

All plaintiffs and proposed plaintiffs claims arise out of their landlords' alleged failure to abide by the same federal housing regulations or related contractual arrangements. They all allege that their respective landlords: (1) violated federal regulations and contractual (HAP) obligations to NYCHA, (2) breached the Section 8 lease agreement, and (3) violated the Brooke Amendment. Plaintiffs and proposed plaintiffs argue that such allegedly unlawful conduct on the part of the landlords directly resulted in the termination of Section 8 subsidies pursuant to NYCHA policies challenged herein. These allegations satisfy the requirements of Rule 20(a), and, thus, joinder should be granted.[16]

### D. Class Action Certification

In addition, plaintiffs move for class action certification pursuant to Fed.R.Civ.P. 23. The proposed class consists of "all tenants participating in the Section 8 'Existing Housing' assistance program whose assistance has been or will be terminated by [NYCHA] because of the landlord's failure to make repairs to an apartment."

Rule 23 provides that "one or more members of a class may sue or be sued as

---

**16.** In addition, proposed plaintiffs argue that joinder is appropriate under Rule 19(a), which defines persons whose joinder in the given action is desirable. Fed.R.Civ.P. 19(a). Since joinder of the proposed defendants is appropriate under Rule 20(a), it is unnecessary to discuss the application of Rule 19(a) at this juncture.

representative parties on behalf of all if," (1) the class is sufficiently numerous that joinder of all proposed members is impracticable, (2) common questions of law or fact align the class, (3) the named class representative asserts claims which are typical of the class as a whole, and (4) the class representative is capable of adequate and fair representation of the interests of the class as a whole. Fed.R.Civ.P. 23(a). If the proposed class satisfies all four elements of Rule 23(a), the court must determine whether the proposed class falls within any one of the three categories of Rule 23(b). Fed.R.Civ.P. 23(b).

■ On a motion for class certification, the moving party bears the burden of proving that all the requirements of Rule 23 are met. *In re Gulf Oil/Cities Service Tender Offer Litigation*, 112 F.R.D. 383 (S.D.N.Y. 1986). Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a "standard of flexibility in application" so that it may best serve the ends of justice and promote judicial economy in a given case. *See e.g., In re A.H. Robbins Co.*, 880 F.2d 709 (4th Cir.1989). Applying these guidelines, the Court finds that the proposed class meets all four requirements of Rule 23(a) and qualifies for class certification under Rule 23(b)(2).

■ First, the Court finds that the proposed class is sufficiently numerous that joinder of all members would be impracticable. Fed.R.Civ.P. 23(a)(1). It is estimated that, during the period from January 1, 1987 to February 28, 1989, over 1,059 Section 8 tenants have had their housing assistance subsidies suspended or terminated pursuant to the NYCHA policies challenged herein. Plaintiffs need not establish the precise number of class members in order to satisfy the numerosity requirement. *Ellender v. Schweiker*, 550 F.Supp. 1348, 1359 (S.D.N.Y.1982), *app. dism'd* 781 F.2d 314 (2d Cir.1984), *cert. denied*, 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986). It is permissible for the plaintiffs to rely on reasonable inferences drawn from the available facts. Furthermore, the lack of knowledge as to the exact number of affected persons is not a bar to maintaining a class action where the defendants alone have access to such data. *See Folsom v. Blum*, 87 F.R.D. 443, 445 (S.D.N.Y. 1980).

Courts in this Circuit routinely have held that classes smaller than that proposed here are sufficiently numerous for class certification. *See, e.g. Korn v. Franchard Corporation*, 456 F.2d 1206, 1209 (2d Cir. 1972); *Koster v. Perales*, 108 F.R.D. 46, 49 (S.D.N.Y.1985); *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 88 F.R.D. 38, 44 (S.D.N.Y.1980). The Court finds that plaintiffs' estimate of class size is reasonable based on the information available to them, and that such is sufficiently numerous for class certification.

■ Rule 23(a)(2) requires commonality of claims—that common legal and factual questions predominate over individual ones. *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981); *See also Port Authority Police Benevolent Association v. Port Authority*, 698 F.2d 150 (2d Cir.1983); *Kirkland v. New York State Department of Correctional Services*, 520 F.2d 420, 427 (2d Cir.1975). The claims of all proposed class members derive from the same NYCHA policies and procedures, and are based on the same legal theories. Accordingly, the Court finds that there is sufficient commonality to satisfy Rule 23(a)(2).

■ Similarly, Rule 23(a)(3) requires typicality of the claims of the named class representatives, to ensure that as they advance their own interests, they will advance the interests of the absent class members as well. *Dura–Bilt*, 89 F.R.D. at 99. It is not necessary that the representative claims be identical to those of the class members. *See, e.g., Sharif v. New York State Education Department*, 127 F.R.D. 84 (S.D.N.Y.1989) (1989); *Wilder v. Bernstein*, 499 F.Supp. 980, 992–93 (S.D.N.Y. 1980). The Court finds that the plaintiffs' claims are typical of those they purport to represent, and therefore satisfy Rule 23(a)(3).

■ Rule 23(a)(4) is also satisfied in the present case. Rule 23(a)(4) requires

that the named class representatives and their counsel will fairly and adequately protect the interests of the class as a whole. Accordingly, a court must inquire whether the proposed representatives: (1) Are able to act as fiduciaries in protecting the interests of the class; (2) have a substantial stake in the controversy; (3) possess adequate resources for the prosecution of the claim; (4) are motivated by reasons other than those relating to the cause; and (5) have any conflicting interests with the class. *See e.g., In re Gulf Oil/Cities Service Tender Offer Litigation,* 112 F.R.D. 383, 387–88 (S.D.N.Y.1986); *Klein v. A.G. Becker Paribas Inc.,* 109 F.R.D. 646, 651 (S.D.N.Y.1986).

Defendants have not argued, let alone persuasively argued, that plaintiffs are unfit to represent the proposed class.[17] It has not been alleged that the proposed class representatives have conflicts with the class, or that they are motivated by something unrelated to the cause of action, or that they are unfit to protect the interests of the class members. Nor has the Court any reason to doubt plaintiffs' competence to protect the interests of the absent class members in the course of litigation. Thus, the Court finds that the proposed class representatives are adequate for the task.

■ The Court also finds that the proposed class falls within the scope of Rule 23(b)(2), which provides for class treatment if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Indeed, NYCHA does not deny that identical policies, procedures, and paperwork have been employed with respect to all proposed class members.

■ The Court finds that class certification is particularly appropriate under the circumstances presented here. It is indeed true that numerous parties have passed in and out of this litigation, as individual tenants and landlords reach compromise agreements, or NYCHA admits error and reinstates the tenant in the Section 8 Program.[18] Plaintiffs threatened with the loss of their homes are more inclined to settle their individual disputes rather than risk eviction in order to challenge the validity of NYCHA's policies. In this context, where the settlement of claims may moot the litigation, and substantial constitutional claims may go unaddressed, class certification will effectively protect the interests of absent class members. *See Susman v. Lincoln American Corp.,* 587 F.2d 866 (7th Cir.1978), *cert. denied,* 445 U.S. 942, 100 S.Ct. 1336, 63 L.Ed.2d 775 (1980); *Griffith v. Bowen,* 678 F.Supp. 942 (D.Mass. 1988).[19]

For the reasons discussed above, the Court certifies the proposed class.

---

17. Many of defendants' "adequacy" arguments border on the nonsensical. For example, NYCHA alleges that named plaintiff McNeill cannot fairly represent the class and that her claim should be dismissed because her apartment does not meet Section 8 housing quality standards. All plaintiffs, however, claim that their individual landlords have failed to abide by Section 8 housing quality standards. Moreover, all plaintiffs, like McNeill, claim that NYCHA's termination practice and procedures violate due process and federal regulations, regardless of their landlords' failure to repair. NYCHA also asserts that McNeill and Johnson are not proper class representatives because their Section 8 certificates have expired and they allegedly received the notices to which they were entitled. But plaintiffs claim that these notices violate due process and that their Section 8 benefits were wrongfully terminated. *See* Amended

Com. ¶¶ 536–542. The flaw inherent in NYCHA's analysis is obvious: it fails to recognize plaintiffs' very claims.

18. In fact, four of the eight proposed plaintiff-intervenors have indicated by letter to the Court that they are discussing settlement with their individual landlords.

19. None of the cases cited by NYCHA warrants denial of class certification because it would be "unnecessary." For example, neither *Tyson v. New York City Housing Authority,* 369 F.Supp. 513 (S.D.N.Y.1974), nor *Kow v. New York City Housing Authority,* 92 F.R.D. 73 (S.D.N.Y.1981), involved class members who had been harmed by past practices of NYCHA and who would not be made whole by prospective relief. Moreover, the numerosity requirement was not satisfied in *Kow.*

### E. Preliminary Injunctive Relief

Finally, all plaintiffs seek to enjoin their respective landlords from proceeding against them in housing court to collect more than plaintiffs' share of rent during the pendency of this litigation. Before preliminary injunctive relief is granted, a party must show both (a) the possibility of irreparable injury, and (b) either (1) a likelihood of success on the merits, or (2) "sufficiently serious questions going to the merits to make a fair ground for litigation and a balance of the hardships tipping in the movants favor." *Charles of the Ritz Corp. Ltd. v. Quality King Distributors, Inc.*, 832 F.2d 1317, 1320 (2d Cir.1987) (citations omitted).

■ The threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury, and satisfies the first prong of the test for preliminary injunctive relief. Even in areas outside of New York City, where the low income housing shortage is less acute, courts have held that the threat of eviction constitutes a threat of "irreparable injury." In *Mitchell v. United States Dep't of Housing & Urban Development*, 569 F.Supp. 701 (N.D.Cal.1983), for example, the likelihood of eviction coupled with the slight prospect of finding alternative, affordable housing was held to constitute sufficient threat of irreparable harm to enjoin eviction temporarily. *See also Tenants for Justice v. Hills*, 413 F.Supp. 389, 393 (E.D.Pa.1975); *Owens v. Housing Authority of City of Stamford*, 394 F.Supp. 1267, 1271 (D.Conn.1975). In this case, if the landlords are not enjoined, they will continue to seek full rental payments from plaintiffs. Since plaintiffs, by definition, cannot afford to pay both NYCHA's rental share along with their own rental share, and since the housing court cannot order NYCHA to restore their participation retroactively,[20] plaintiffs face eventual eviction.

■ Further, plaintiffs' allegations raise several sufficiently serious questions which go to the merits and make a fair ground for litigation, including: (1) Whether the termination of Section 8 assistance for tenants' current apartments, without an opportunity to challenge the proposed termination, violates due process of law [21] and the United States Housing Act;[22] (2) whether the notices issued by NYCHA are incomplete, misleading, and/or inaccurate,[23] in violation of due process of law;[24] (3) whether NYCHA's termination notices are inadequate, in violation of federal regulations 24 C.F.R. §§ 882.116(f), 882.209(c), and HUD handbook at 7420.7 ¶ 5–10(a); (4) whether NYCHA terminates housing assistance without taking steps mandated by federal law,[25] in violation of HUD Hand-

---

20. *See* N.Y. City Civ.Ct. Act § 110.

21. *See Cleveland Board of education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 16–19, 98 S.Ct. 1554, 1564–65, 56 L.Ed.2d 30 (1978); *Dwyer v. Regan*, 777 F.2d 825, 831–33 (2d Cir.1985), *mod.*, 793 F.2d 457 (2d Cir.1986).

22. 42 U.S.C. § 1437d(k).

23. Plaintiffs allege that the suspension notices omit essential information and are materially misleading in many respects: (1) the notices fail to explain what a tenant may do to prevent a loss of assistance; (2) the notices do not distinguish between a *suspension* of assistance and a *termination* of participation in the Section 8 program; (3) the notices do not explain that while subsidies are suspended, the tenant is not liable for payment of any monies withheld by the Authority and cannot be sued for such monies; (4) the notices do not state that the landlord must receive written permission from NYCHA before commencing any eviction proceeding against the tenant; (5) the initial notice is misleading in that it states that NYCHA will assist the tenant in finding other housing when, in fact, NYCHA provides no such assistance; (6) in numerous cases, notices of suspension are provided in an untimely manner.

24. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Henry v. Gross*, 803 F.2d 757, 767 (2d Cir.1986); *Burr v. New Rochelle Municipal Housing Authority*, 479 F.2d 1165, 1168 (2d Cir.1973); *Willis v. Lascaris*, 499 F.Supp. 749, 759 (N.D.N.Y.1980).

25. In particular, plaintiffs allege that NYCHA fails to assist tenants in locating alternative housing, fails to give tenants a "full explanation" of their rights and responsibilities, and fails to take any alternative actions to cure landlords' default other than to suspend Section 8 payments for 60 days and, shortly thereafter to terminate the contract.

book ¶ 5–9(b)(2); 24 C.F.R. § 882.209; 24 C.F.R. § 882.116; (5) whether the defendant landlords have failed to fulfill their obligations to abide by federal housing regulations, as set forth in their HAP contracts.

■ Moreover, the balance of equities favor injunctive relief. Absent a showing to the contrary, the threat of eviction and the prospect of homelessness to the tenants outweighs the inconvenience and hardship to the landlords. The landlords need not be enjoined from taking any action in housing court. In order to protect plaintiffs' ability to present their claims, this Court need only enjoin the landlords from seeking to collect more than the tenants' rental share under the Section 8 program, or from taking any action to evict tenants based upon the nonpayment of amounts in excess of tenants' share of rent. The landlords may still seek to collect the tenants' rental share under their most recent Section 8 contracts. Of course, if the balance of equities shifts, the Court remains free to modify the preliminary injunctive relief at any time on a proper application.

■ The abstention doctrine and the related Anti–Injunction Act do not, as NYCHA vigorously argues, preclude such preliminary injunctive relief. Under the abstention doctrine, federal courts should "abstain from jurisdiction whenever federal claims have been or could have been presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 237–38, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186 (1984). *See also*

*Younger,* 401 U.S. 37, 91 S.Ct. 746; *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603–605, 95 S.Ct. 1200, 1207–09, 43 L.Ed.2d 482 (1975); *Ohio Civil Rights Commission v. Dayton Christian Schools,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). The doctrine does not apply, however, when plaintiffs' federal claims cannot be presented in pending state proceedings. *Ohio Civil Rights Commission,* 477 U.S. at 625–29, 106 S.Ct. at 2721–24; *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 435–37, 102 S.Ct. 2515, 2523–24, 73 L.Ed.2d 116 (1982); *Moore v. Sims,* 442 U.S. 415, 425, 99 S.Ct. 2371, 2378, 60 L.Ed.2d 994 (1979).

■ Applying these principles, the Court finds that the doctrine of *Younger* abstention does not apply here. Contrary to NYCHA's assertions, plaintiffs seek to do much more than to enforce their landlords' duty to properly maintain their apartments.[26] They broadly challenge NYCHA's termination policies and practices, regardless of whether their landlords failed adequately to maintain their apartments. These federal claims cannot be adequately presented in the pending housing court proceedings. NYCHA is not subject to the jurisdiction of housing court, and no final judgment of that tribunal is binding upon it. N.Y.Civ.Ct. Act § 110. Further, the housing court does not have jurisdiction to adjudicate plaintiffs' claims for retroactive reinstatement of their Section 8 assistance; nor does it have power to issue relief on those claims. Since plaintiffs cannot obtain adequate relief in housing court, this Court is not precluded by the abstention doctrine from issuing a preliminary injunction.[27]

26. NYCHA argues that "[t]he real issue at the heart of this litigation is ... that the landlords of plaintiffs and proposed intervenors have failed to provide housing that is decent, safe and sanitary as required by federal regulations." NYCHA Reply Mem. at 30. Not surprisingly, NYCHA would have this Court shift its entire focus to the landlord defendants, and ignore the numerous claims against NYCHA.

27. Even if plaintiffs could obtain relief in the pending housing court proceedings against them, the *Younger* doctrine would still be inapplicable for a second reason. The doctrine does not apply unless "the State's interests in the

proceedings are so important that exercise of the federal power would disregard the comity between the States and the national Government." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987). The housing court proceedings against plaintiffs are purely civil matters involving private litigants. Thus, in this case the State has only limited interest in the pending state proceedings—the interest in protecting their "fair adjudication." 107 S.Ct. at 1530 (Brennan, concurring in judgment). No governmental entity is a party to the housing court proceedings, nor could they become one.

Defendants also allege that the Anti–Injunction Act bars injunctive relief. This Act prohibits federal courts from granting injunctions to stay state court proceedings except "as authorized by an Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The "in aid of jurisdiction" exception authorizes federal relief when "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970); *see also In re Baldwin–United Corp.*, 770 F.2d 328, 335 (2d Cir.1985). The exception "is meant 'to give sufficient flexibility that a federal court, as a court of equity, may, when it has jurisdiction, deal adequately with the situation at hand.'" *James v. Bellotti*, 733 F.2d 989, 993 (1st Cir.1984), *quoting* 1A Moore's Federal Practice ¶ 0.208a[2], at 2336. This exception applies here.

Plaintiffs allege that they have been terminated from the Section 8 program due to circumstances beyond their control without adequate notice and without any opportunity to challenge termination. Unless eviction proceedings are stayed long enough to adjudicate plaintiffs' alleged right to retroactive reinstatement in the Section 8 program, plaintiffs will be evicted before this case can be decided. In this event, the Court will be unable to accord meaningful relief to the parties.[28] Reinstatement in Section 8 without an apartment would be tantamount to no relief at all. Similarly, a change in NYCHA's Section 8 termination policies and practices would mean little to plaintiffs who have already lost their apartments. Preliminary injunctive relief thus is essential to aid this Court's ability to decide the claims and accord the appropriate relief.[29]

In sum, the pending eviction proceedings do not give plaintiffs an adequate forum to challenge the termination of their Section 8 assistance. Accordingly, under the exceptions to the doctrine of *Younger* abstention and the Anti–Injunction Act, the Court may stay housing court proceedings until the validity of the termination of plaintiffs' assistance can be decided. Since plaintiffs have demonstrated the threat of irreparable harm, articulated sufficiently serious questions going to the merits to make a fair ground for litigation, and set forth a balance of hardships tipping in their favor, this Court grants their request for a preliminary injunction.

## F. *Defendant Annico's Motion for Judgment on the Pleadings*

Defendant Annico Development Corporation ("Annico") crossmoves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) and for sanctions pursuant to Fed.R.Civ.P. 11. In general, "federal courts have followed a fairly restrictive standard in ruling on motion for judgment on the pleadings." 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1368, at 689 (1969). A court may only grant a Rule 12(c) motion "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters Inc.*, 842 F.2d 639 (2d Cir.1988) (citation omitted). *See also National Un. Fire Ins. v. Mason, Perrin & Kanovsky*, 709 F.Supp. 411 (S.D.N.Y.1989). When passing on a motion for judgment on the pleadings, a court must accept as true all well-pleaded facts alleged in the complaint and refrain from dismissing the action unless the non-movant can prove no

---

**28.** *See e.g., Caulder v. Durham Housing Authority*, 433 F.2d 998 (4th Cir.1970), *cert. denied*, 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971).

**29.** Because the Court finds that the "in aid of jurisdiction" exception to the Anti–Injunction Act applies, the Court need not consider whether the "expressly authorized by an Act of Congress" exception applies. The Court notes, however, that it appears to apply as well since many of plaintiffs' claims against NYCHA are made pursuant to § 1983. As the Supreme Court held in *Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972), § 1983 "is an Act of Congress that falls within the 'expressly authorized' exception" to the anti-injunction act.

set of facts that would entitle it to relief. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985).

 For the purposes of this motion, then, it must be assumed as true that Annico has sued to evict McNeill for nonpayment of monies that the Housing Authority—and not McNeill—was responsible for paying. Further, it must be assumed as true that Annico failed to make repairs to McNeill's apartment as required by federal regulations, and that this failure caused the Housing Authority to terminate McNeill's Section 8 housing assistance. With each of these facts deemed admitted in McNeill's favor, it is clear that this Court cannot grant Annico full judgment on the pleadings.[30]

McNeill's claims are identical to those of plaintiffs and proposed plaintiffs detailed above and thus do not require detailed discussion here. As previously noted, McNeill does not have a right to bring its Brooke Amendment claim against Annico and, thus, this claim is dismissed. *See infra* at 246–248. However, as the intended third-party beneficiary, she may seek to enforce Annico's HAP contract with NYCHA and, accordingly, enforce Annico's agreement to abide by federal housing regulations. *See infra* at 248–250. Read in their most favorable light, the amended complaint states facts that, if proven, would entitle McNeill to relief on this claim. McNeill has also adequately alleged the elements of her pendant state contract and breach of warranty claims. Thus, the Court cannot award Annico full judgment on the pleadings.

 Annico also urges this Court to sanction McNeill's counsel for submitting an affidavit to this Court which she knew

to be false in relevant portion. Moreover, Annico contends that the entire complaint is frivolous as to Annico. Recently, this Court exhaustively reviewed the standards applicable to Rule 11 sanctions. Such discussion need not be repeated here. *See Quadrozzi v. City of New York,* 127 F.R.D. 63, 78–80 (S.D.N.Y.1989). Upon review of the parties' submissions, the Court finds that Rule 11 sanctions are not warranted in the present case. The Court is unconvinced that McNeill's counsel submitted an affidavit which she knew to be false. Further, the Court does not find that the complaint is frivolous as to Annico. Therefore, Annico's motion for Rule 11 sanctions is denied.

## III. CONCLUSION

For the reasons stated above, plaintiffs' motions for joinder, intervention, class certification and preliminary injunctive relief are granted. The class shall consist of all tenants participating in the Section 8 "Existing Housing" assistance program whose assistance has been or will be terminated by NYCHA because of the landlords' failure to make repairs to an apartment. Defendant Annico's cross-motion for judgment on the pleadings is granted only as to plaintiff McNeill's Brooke Amendment claim.

Pending a final determination of the case at bar, the Court enjoins the named and joined defendant landlords from suing or recovering from such tenants amounts greater than the tenants' share of rent under their most recent Section 8 contracts.[31] The landlords still may seek to collect a tenant's share of rent under her Section 8 contract. The landlords may not, however, seek to collect from tenants NY-

---

**30.** Annico would have this Court take judicial notice of affidavits submitted in connection with their motion. In particular, Annico urges the Court to note that McNeill has failed to make housing payments in a timely fashion as required by a stipulation and order entered into on November 7, 1988 between counsel for Annico and McNeill. If this Court were to take notice of affidavits, it should convert Annico's motion into one for summary judgment and allow McNeill to respond after due notice.

**31.** The Court does not address whether and under what circumstances the preliminary injunction should be extended to cover other members of the class and their landlords who have not yet received notice of this action. This injunction only covers named and joined landlord defendants. Of course, any party may address the extent to which the injunction should be broadened, narrowed or otherwise modified.

CHA's rental contribution under the Section 8 agreements or take any action to evict tenants based upon the nonpayment of amounts in excess of the tenants' share of rent.

SO ORDERED.