**FOREST PARK II, a Minnesota Limited Partnership, Plaintiff,**

v.

**Katherine HADLEY, in her capacity as Commissioner of the Minnesota Housing Finance Agency, et al., Defendants**

and

**Family Housing Fund, Intervenor.**

No. Civ. 02–480(MJDSRN).

United States District Court, D. Minnesota.

May 10, 2002.

William F. Mohrman and Erick G. Kaardal, Mohrmann & Kaardal, P.A., Minneapolis, MN, for and on behalf of Plaintiffs.

John Cann, Timothy Thompson and Ann M. Norton, Housing Preservation Project, St. Paul, Minneapolis, MN, for and on behalf of Defendant Forest Park II Tenants Association.

Amy Kvalseth, Assistant Minnesota Attorney General, St. Paul, MN, for and on behalf of Katherine Hadley in her capacity as Commissioner of the Minnesota Housing Finance Agency.

George C. Hoff, Thomas G. Barry, Jr. and Kimberly B. Kozar, Hoff, Barry & Kuderer, P.A., Eden Prairie, MN, for and on behalf of the Defendant City of Forest Lake.

Charles N. Nauen, Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, for and on behalf of the Metropolitan Council.

Charles R. Shreffler, Shreffler Law Firm, P.A., Minneapolis, MN, for and on behalf of Defendant Jennette Forga.

Richard A. Duncan and Karleen M. O'Connor, Faegre & Benson, Minneapolis, MN, for and on behalf of Intervenor Family Housing Fund.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Before the Court is Defendant Forest Park II Tenants Association's ("Tenants Association") motion for a preliminary injunction or for partial summary judgment and a permanent injunction. Plaintiff opposes the motion, and has submitted a Rule 56f affidavit, declaring that Plaintiff needs to conduct further discovery to adequately respond to the Tenants Association's motion.

## FACTUAL BACKGROUND

Plaintiff Forest Park II is a Minnesota limited partnership, the sole business of which is the ownership of a 60 unit apartment building in Forest Lake, Minnesota. The Forest Park apartment building was constructed in the early 1970's and was financed through a "limited distribution mortgage loan" that was issued pursuant to Section 236 of the National Housing Act. Pub.L. 90–448, 82 Stat. 498, 499 (1968). The Section 236 Loan Program was enacted to provide for the private development of low income housing by subsidizing mortgage interest payments to private real estate developers, who would then agree to rent units to individuals whose income did not exceed certain levels, at rental rates below market. In addition, the Section 236 Loan Program prohibited owners from prepaying or paying off the mortgage prior to twenty years after obtaining the loan. 12 U.S.C. § 1715z–1; 24 C.F.R. § 236.30(a)(i)(1970).

Because Forest Park II was financed through a Section 236 loan, the applicable regulations require Forest Park II to not charge rents less than $325 per month or greater than $488 per month.

Forest Park II now seeks to prepay its Section 236 loan for financial reasons. The current applicable federal law provides that Forest Park II may prepay the mortgage, but that it must provide not less than 150 days and not more than 270 days written notice of its intent to prepay the mortgage to each tenant, the Secretary of HUD, and the chief executive officer of the appropriate State or local government for the jurisdiction within which the housing is located. Pub.L. 105–276, § 219(b)(3)(1999). On October 25, 2001, Forest Park II provided the written notice to the appropriate recipients, notifying each of its intent to prepay the mortgage on May 1, 2002. Norton Affidavit, Ex. 3. HUD thereafter notified Forest Park II by letter that it had complied with all federal requirements to pay off the mortgage note. Gaughan Decl., Ex. 2. The letter also provides that "Please be advised we have not reviewed the owners' submission for compliance with the State of Minnesota notification requirements." *Id.*

Minnesota law provides that a landlord of federally subsidized housing that intends to prepay a mortgage that will result in the termination of any federal use restrictions, must give the affected residential tenants a one-year written notice. Minn.Stat. § 504B.255. Further, Minnesota law provides that

[a]t least 12 months before termination of participation in a federally assisted

rental housing program, including project-based section 8 and section 236 rental housing, the owner of the federally assisted rental housing must submit a statement regarding the impact of termination on the residents of the rental housing to the governing body of the local government unit in which the housing is located . . .

Minn.Stat. § 471.9997 (1998).

It is undisputed that Forest Park II has not complied with the notice requirements and the impact statement required by Minnesota law. Accordingly, the Tenants Association have asked the Court for an order enjoining Forest Park II from prepaying the mortgage until such time as Minnesota law has been complied with.

In response to the motion of the Tenants Association for injunctive relief, Forest Park II asserts that the Minnesota laws cited above are preempted by federal law.[1] Forest Park further argues that the Tenants Association cannot establish it is entitled to injunctive relief based upon the *Dataphase* factors.

### Standard for Injunctive Relief

The Eighth Circuit has established the following analysis to be used in considering a preliminary injunction motion:

> [W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the proba-

---

1. In its Complaint, Forest Park II asserts a claim that the Minnesota statutes at issue here violate the contracts clause of the United States Constitution, Art. I, Sec. 10. However, in its response to the Tenants Association's argument that the Contracts Clause is not implicated, Forest Park II remarks in a footnote that the Tenants Association's argument is absurd. Otherwise Forest Park II does not argue the merits of its Contracts Clause claim. In addition, Forest Park II did not provide any argument in support of its Contract Clause claim at oral argument. The Court construes this silence as abandonment of this claim.

bility that movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.1981); *accord Medtronic, Inc. v. Gibbons*, 527 F.Supp. 1085, 1090 (D.Minn.1981), *aff'd*, 684 F.2d 565 (8th Cir.1982). The standard for granting a permanent injunction is essentially the same as for a preliminary injunction, except that the movant must show success on the merits, rather than a likelihood of success. *Bank One v. Guttau*, 190 F.3d 844, 847 (8th Cir.1999). When the only issues before the Court are questions of law, a permanent injunction is appropriate. *Id.*

The Tenants Association's request for injunctive relief will be determined solely on whether state law is preempted. Because preemption is a question of law, the Court will treat Tenants Association's motion as one for a permanent injunction.

### 1. Success on the merits

■ The Supremacy Clause of the U.S. Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. State law that conflicts with federal law is thus considered to be "without effect." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)(citing *McCulloch v. Maryland*, 17 U.S. 316, 4 Wheat. 316, 4 L.Ed. 579 (1819)). Preemption analysis begins, however, "with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Id.* (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Preemption thus occurs if consistent with Congress' intent in passing the federal law at issue.

Congress' intent may be "explicitly stated in the statute's language, or implicitly in its structure and purpose." ... In the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law ... or if federal law so thoroughly occupies a legislative field " 'as to make reasonable the inference that Congress left no room for the States to supplement it.' "

*Id.* (citations omitted).

### A. Express Preemption

■ Forest Park II asserts that the relevant Minnesota statutes are expressly preempted by 12 U.S.C. § 4122. The Court finds, however, that based on the statute's legislative history, and the language contained in the preemption provision specifically, there is no express preemption.

In 1987, Congress enacted the Emergency Low Income Housing Preservation Act of 1987 ("ELIHPA") in response to concerns that hundreds of thousands of low income housing units would be lost through prepayment of mortgages under the Section 236 Loan Program, which allowed for the prepayment of mortgages after twenty years. *Cienega Gardens v. United States*, 265 F.3d 1237, 1240 (Fed. Cir.2001). ELIPHA prohibited prepayment of such mortgages except in accordance with a plan of action approved by HUD. § 225(a), 12 U.S.C. § 17151. ELIPHA further authorized HUD to provide incentives to the owners to preserve the housing as affordable. *Id.* § 225(b).

In 1990, however, Congress passed the Low Income Housing Preservation and Resident Homeownership Act ("LIHPRHA"). LIHPRHA, which superseded ELIHPA, provided that an owner could prepay the mortgage, but only after providing notice to HUD, who would extend certain incentives. *See* Pub.L. No. 101–625, 104 Stat. 4249, codified at 12 U.S.C.

§ 4101–4125. The owners could reject the incentives, and still be allowed to prepay, if the owner submitted a plan of action to HUD which protected the current tenants and if HUD made a specific finding that the prepayment would not adversely affect the low income housing supply. 12 U.S.C. § 4108. Further, LIHPRHA contained the following preemption provision:

(a) In general. No State or political subdivision of a State may establish, continue in effect, or enforce any law or regulation—(1) restricts or inhibits the prepayment of any mortgage described in section 4119(1) of this title ... on eligible low income housing; (2) restricts or inhibits an owner of such housing from receiving the authorized annual return provided under section 4101 of this title; (3) is inconsistent with any provision of this subchapter, including any law, regulation, or other restriction that limits or impairs the ability of any owner of eligible low income housing to receive incentives authorized under this subchapter (including authorization to increase rental rates, transfer the housing, obtain secondary financing, or use the proceeds of any of such incentives); or (4) in its applicability to low income housing is limited only to eligible low income housing for which the owner has prepaid the mortgage or terminated the insurance contract.

Any law, regulation or restriction described under paragraph (1), (2), (3), or (4) shall be ineffective and any eligible low income housing exempt from the law, regulation, or restriction, only to the extent that it violates the provisions of this subsection.

(b) Effect. This section shall not prevent the establishment, continuing in effect, or enforcement of any law or regulation of any State or political subdivision of a State not inconsistent with the provisions of this subchapter, such as any law or regulation relating to building standards, zoning limitations, health, safety, or habitability standards for housing, rent control, or conversion or rental housing to condominium or cooperative ownership, to the extent such law or regulation is of general applicability to both housing receiving Federal assistance and nonassisted housing. This section shall not preempt, annul, or alter any contractual restrictions or obligations existing before November 28, 1990, that prevent or limit an owner of eligible low income housing from prepaying the mortgage on the housing (or terminating the insurance contract on the housing).

12 U.S.C. § 4122.

In 1996, Congress enacted a number of measures that essentially endered LIHPRHA inoperable and established an alternative set of prepayment provisions. Pub.L. 104–120, the Housing Opportunity Program Extension Act ("HOPE") of 1996. These enactments permitted prepayments notwithstanding the requirements of LIHPRHA and provide for enhanced vouchers for residents of prepayment properties.

As indicated by the language of Section 4122 itself, the statute only preempts state law that is "inconsistent with the provisions of this *subchapter*"; in other words LIHPRHA. Section 4122 therefore has no applicability to state law that may conflict with the notice provisions enacted apart from LIHPRHA. In this case, Forest Park II asserts that the relevant state laws conflict with Section 219 of the 1999 HUD Appropriations Act, Pub.L. 105–276, § 219(b)(3)(1999).

Although Congress did not expressly repeal LIHPRHA, the Court agrees that its provisions apply only to a property in the LIHPRHA program prior to 1996. Because the property at issue in this case was not involved in the LIHPRHA program prior to 1996, the provisions of

§ 4122 are not implicated. This position is support by HUD, and has been adopted by two California district courts. *See,* Norton Aff., Ex. 4, HUD Letter Brief. *See also, Kenneth Arms Tenant Association et al. v. Mel Martinez et al.* Civ. No. S–01–832 (LKK/JFM) (E.D.Cal.2001); *Topa Equities, Ltd. v. City of Los Angeles,* Civ. No. 00–10455 (C.D.Cal.2002). The Court thus finds that the relevant state laws are not expressly preempted by § 4122.

### B. Conflict Preemption

■ Conflict preemption may occur because "compliance with both federal and state regulations is a physical impossibility ... or because the state law stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *California Federal Savings and Loan Association v. Guerra,* 479 U.S. 272 281, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987).

■ As to the first type of conflict preemption, the Court finds that compliance with both the federal and state laws at issue is possible. In fact, the Tenants Association has demonstrated how both state and federal law can be complied with by giving the one year notice and impact statement as required by state law, and then, within the 150–270 day time frame, notice is given pursuant to federal law. *See* Goepfert Decl., Exhibits 1–3.

The Court further finds that complying with the state notice and impact provisions does not frustrate any Congressional purpose. Forest Park II argues that placing additional requirements onto prepayments frustrates Congress' purpose in rerouting scarce resources to fund the more critical low income housing needs, citing to a 1996 HOPE Conference Report. However, Forest Park II has provided the Court no support for the assertion that Congress intended to eradicate the 236 program, in favor of tenant based programs such as section 8 vouchers. In fact, Congress recently enacted legislation which provides incentives for owners of section 236 housing to extend commitments thereunder. Pub.L. 106–74, Section 532.

Accordingly, the Court finds that Minn. Stat. §§ 471.9997 and 504B.225 are not preempted by federal law. The Court further finds that no genuine issues of material fact preclude judgment in favor of Defendants on their counterclaim.[2]

### 2. Irreparable Harm

■ The Court finds that Defendants have successfully established that they will suffer irreparable harm if the requested injunctive relief is not granted. The Tenants Association asserts that its members will suffer irreparable harm if the requested injunction is not granted. They argue that many residents will be threatened with substantial increases in rent, which may force them to lose their homes. *See* Norton Aff, Exs. 8 and 9, Smith Decl. ¶ 5, Sans Decl. ¶ 5. "The threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury, and satisfies the [irreparable injury] prong of the test for preliminary injunctive relief. Even in areas outside of New York City, where the low income housing shortage is less acute, courts have held that the threat of eviction constitutes a threat of 'irreparable injury.' " *McNeill v. New York City Housing Authority,* 719 F.Supp. 233, 254 (S.D.N.Y.1989).

---

**2.** Plaintiff attempts to avoid entry of judgment in favor of Defendants by asserting that additional discovery is required. The Court finds, however, that no additional discovery is needed to determine whether state is law is preempted or not. In addition, the Court finds that additional discovery will not alter the Court's finding as to the remaining *Dataphase* factors.

Intervenor Family Housing Fund further asserts that if the requested injunction is not granted, it will be irreparably harmed because it will lose the opportunity to preserve Forest Park as long term affordable housing. Although Forest Park II argues that it has no interest in preserving the units as low income housing, the Court agrees that FHF, as well as the Minnesota Housing Finance Agency or any other entity receiving notice, nonetheless should be given the opportunity to explore different strategies for the property with Forest Park II. Clearly, preserving low income housing is more economical that building new housing.

### 3. Balance of Hardships and Public Policy

As noted above, Congress has indicated its clear intent to preserve Section 236 housing by passing legislation that provides for additional incentives to owners to extend federally assisted housing. Pub.L. 106–74, Section 532. In addition, Minnesota has also enacted legislation aimed at preserving federally assisted housing. Minn. Laws 1998, ch. 389, art. 14. Section 2 of Article 14 provided an appropriation of $10,000,000 to finance loans to owners of rental property to induce their continued participation in federally assisted housing programs. Odman Decl. ¶ 3. An additional $30 million was appropriated by the Minnesota legislature in 1999, and another $20 million was appropriated in 2001 for such preservation loans. *Id.* Given the clear intent of Congress, and of the Minnesota legislature, to preserve federally assisted housing, the Court finds that the balance of hardships and public policy weigh in favor of the requested injunctive relief.

### Conclusion

Because Defendants are entitled to judgment as a matter of law with regard to Plaintiff's claims that the Minnesota laws are preempted, and because Plaintiff has abandoned its claim that the Minnesota laws violate the Contracts Clause of the U.S. Constitution, the Court hereby finds that Defendants are also entitled to judgment as to Plaintiff's claims under 42 U.S.C. §§ 1983, 1985 and 1988.

IT IS HEREBY ORDERED that Defendant Tenants Association's Motion for Summary Judgment and a Permanent Injunction is GRANTED. Accordingly,

1. It is adjudged and declared that Minn. Stat. §§ 471.9997 and 504B.255are not preempted by federal law.

2. Plaintiff Forest Park II is required by Minn.Stat. § 504B.255 to provide written notice to the tenants of Forest Park II Apartments that the Plaintiff will prepay the mortgage and the prepayment will result in the termination of federal use restrictions.

3. Plaintiff Forest Park II is required by Minn.Stat. § 471.9997 to provide written notice to tenants, the local governing body, the Metropolitan Council and to the Minnesota Housing Finance Agency of the number of units that will no longer be subject to rent restrictions imposed by the federal program, the estimated rents that will be charged as compared to rents charged under the federal program, and actions the owner will take to assist displaced tenants in obtaining other housing at least one year prior to prepaying the federally subsidized mortgage and thereby terminating the federal subsidy and federal rent and occupancy restrictions covering 60 units at Forest Park II Apartments in Forest Lake, Minnesota.

4. A permanent injunction is ordered entered prohibiting Plaintiff Forest Park II from prepaying the federally subsidized mortgage loan on Forest Park II Apartments in Forest Lake, Minnesota

until the written notices required by Minn.Stat. §§ 471.9997 and 504B.255 have been provided and a year has elapsed from the provision of such notices.

5. Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.